**George EDGE, Appellant,**

v.

**Richard SCHWEIKER, Secretary of Health and Human Services.**

**No. 86–3619.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6),

March 5, 1987.

Decided March 18, 1987.

---

Samuel S. Blaufeld, Pamela M. Schiller, Blaufeld and Schiller, Pittsburgh, Pa., for appellant.

Beverly Dennis, III, Chief Counsel, Region III, Charlotte Hardnett, Supervisory Asst. Regional Counsel, Dorothea Lundelius, Asst. Regional Counsel, Dept. of Health and Human Services, Philadelphia, Pa., J. Alan Johnson, U.S. Atty., Albert W. Schollaert, Asst. U.S. Atty., U.S. Atty's Office, Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, SEITZ and ALDISERT, Circuit Judges.

### OPINION OF THE COURT

ALDISERT, Circuit Judge.

We must presently decide whether the district court properly denied attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A), in a social security case. The court concluded that the position of the Secretary of Health and Human Services was substantially justified when he originally opposed a grant of disability benefits. We hold that the court erred. Accordingly, we will reverse the judgment of the district court and remand these proceedings for calculation of attorney's fees under EAJA.

I.

George Edge filed a social security disability claim on the basis of a stroke he sustained on June 2, 1980, while working as a pipe loader for Armco Steel Corporation. He testified that he felt as if he had been struck on the left side of the head; he experienced pain, dizziness, lightheadedness, and had to be hospitalized. Edge was fifty-eight years old when he suffered the stroke; he has not worked since.

Two Armco physicians examined Edge and concluded that he was totally disabled as a result of ischemic attacks and that he

was unable to return to work. In addition, Dr. Wachs, a neurologist at Allegheny General Hospital, examined Edge twice during the month following the incident and confirmed the diagnosis as a "transient ischemic attack affecting the brainstem, secondary to atherosclerosis." App. at 42a. Finally, a report by Edge's treating physician, Dr. Brabson, concluded that Edge could perform menial household chores, but doubted that he would be able to engage in gainful employment in the future.

At a hearing before an Administrative Law Judge, Edge testified that since the incident he experienced attacks of dizziness several times a week. He stated that he must lie down for several hours when these attacks occur, that he has trouble with his balance, that he can drive only for short distances, and that he is quite depressed. The testimony concerning his emotional state was corroborated by his wife and daughter-in-law.

The government countered this evidence of disability by noting that Dr. Wachs indicated that Edge "does not have any motor impairment and obviously he has not had a major stroke." *Id.* at 42a. The government also relies on isolated statements of Dr. Brabson, who reported that there were no residuals, no neurological abnormalities, and no weakness of the extremities.

On the basis of the foregoing testimony, the ALJ denied disability benefits and the appeals council agreed. The district court affirmed the Secretary's decision and Edge lodged an appeal in this court. In *Edge v. Schweiker*, 735 F.2d 1348 (3d Cir.1984) (unpublished opinion), we vacated the judgment of the district court and remanded the case for further proceedings, stating:

> We are unable to discern any evidence in the record that Edge is able to return to his former employment, particularly in light of the ALJ's recognition that:
>
> > [P]hysicians having a responsibility to claimant's former employer and a treating physician have indicated that

claimant is totally and permanently disabled from engaging in his former employment in a mill environment near machinery, a wholly understandable recommendation where a history of unpredictable attacks of vertigo is given by the employee.

We have repeatedly stressed that the medical evaluation of treating physicians is entitled to significant weight, particularly if it is uncontradicted by other expert medical testimony: "an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." ... Neither the ALJ nor the appeals council was free to disregard the testimony of the treating physician, the neurologist who diagnosed the ischemic attacks, and the company doctors, concerning work restrictions in the absence of substantial evidence to the contrary.... By assuming the ability to return to prior employment despite substantial evidence to the contrary, the ALJ and the appeals council erred as a matter of law. By affirming this ruling, the magistrate and the district court erred as well.

App. at 146a–47a (citations omitted).[1]

Upon remand, the case was presented to a different ALJ. A neurologist subsequently conducted another examination on Edge in July 1985 and concluded that he would be limited to sedentary work activity. Reversing the decision made by the first hearing officer, the ALJ determined that Edge was disabled; the appeals council adopted the ALJ's recommendation and found that Edge was entitled to disability insurance benefits. Edge thereafter filed with the district court an application for attorney's fees under EAJA. The magistrate recommended that fees not be awarded; the district court, adopting the magistrate's report, denied Edge's application. Appeal to this court followed.

---

**1.** We recognize that an unpublished opinion has no precedential value and should not be cited as authority in a subsequent case. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Chapter 8C, at

25; *Krolick Contracting Corp. v. Benefits Review Board,* 558 F.2d 685, 689 (3d Cir.1977). The reference made here is necessary, however, to record the law of this case.

## II.

This appeal presents a question of statutory interpretation. EAJA provides that a qualified prevailing party is entitled to receive attorney's fees incurred in an action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In issue is the meaning of the phrase "substantially justified."

We are not required to make an original interpretation of this phrase because this court has fulfilled this responsibility on numerous prior occasions. *See, e.g., Stokes v. Bowen,* 811 F.2d 814 (3d Cir.1987). Accordingly, we are not required to choose between competing legal precepts or to provide a fresh interpretation of the statute. Rather, our role is simply to apply settled law to the facts before us. Our review of the district court's denial of attorney's fees under EAJA is plenary. *Stokes,* 811 F.2d at 816; *Washington v. Heckler,* 756 F.2d 959, 961 (3d Cir.1985).

■ Substantial justification constitutes a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position is considered frivolous. The burden of proving the statutory concept of substantial justification is on the government. To meet its burden, the government must show a reasonable basis in truth for the facts alleged, a reasonable basis in law for the theory it propounds, and a reasonable connection between the facts alleged and the legal theory advanced.

The government's burden is a strong one and is not met merely because the government adduces "some evidence" in support of its position. However, there is no per se rule that imposes counsel fees on the government when it loses merely because its legal theory is rejected.[2] If the case turns on an unsettled or a close question of law, the government will be able to estab-

lish that its legal theory was reasonable even if it was not ultimately accepted as a legal rule by the courts. By contrast, if the government's legal position clearly offends established precedent, its position cannot be said to be substantially justified. The foregoing constitute the precepts that will guide our decision here. *See* cases collected in *Washington,* 756 F.2d at 961–62.

## III.

■ Applying the foregoing legal precepts, we conclude that the government has not met its strong burden. First, it is the law of this case, as established in our initial proceedings, that the ALJ neglected to attribute significant weight to the medical evaluation of the treating and examining physicians, and that the testimony of the treating physician, the neurologist, and the company doctors was disregarded notwithstanding that there was no evidence to the contrary. Moreover, we said that we were unable "to discern any evidence in the record that Edge is able to return to his former employment." *Edge v. Schweiker,* 735 F.2d 1348 (3d Cir.1984) (unpublished opinion).

We need go no further than the opinion supporting the adjudication before the original ALJ to demonstrate the weakness of the government's case. The ALJ noted Dr. Brabson's report, which stated:

> I am sure ... that, although [Edge] could perform menial household chores and trivial work, he probably, at age 60, will no longer be able to carry out gainful employment in the future.

App. at 55a. Moreover, the ALJ was "aware that physicians having a responsibility to claimant's former employer and a treating physician have indicated that claimant is totally and permanently disabled from engaging in his former employment in a mill environment near machinery, a wholly understandable recommendation where a history of unpredictable attacks of vertigo is given by the employee." *Id.* The foregoing was extremely impressive evidence in favor of the claimant.

---

2. *But see Washington v. Heckler,* 756 F.2d 959, 969 (3d Cir.1985) (Aldisert, C.J., concurring) (Where there is no substantial evidence on the record supporting the Secretary's position "I would hold as a matter of law that, absent truly extraordinary circumstances ... the position of the United States was not substantially justified.").

Yet, countervailing this formidable evidence was the ALJ's interpretation of it:

The weight to be given such statements depends on the extent they are supported by specific and complete clinical findings and are consistent with other evidence in the claimant's case. Now that the reports of treating physicians are to hand, it is clear that any problem claimant suffers from is minor and arises from excessive use of cigarettes and alcohol and easily correctable.

*Id.* But this court has found, and it is the law of this case, that the ALJ grossly erred in putting this dark gloss on the evidence. *Edge v. Schweiker*, 735 F.2d 1348 (3d Cir. 1984) (unpublished opinion). Medical evaluations by treating physicians are entitled to significant weight, particularly if they are uncontradicted by other expert medical testimony. An ALJ is not free to set his own expertise against that of physicians who present competent medical evidence. *Coria v. Heckler*, 750 F.2d 245, 248 (3d Cir.1984); *Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1155 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981); *Kelly v. Railroad Retirement Board*, 625 F.2d 486, 494 (3d Cir.1980); *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir.1979). Thus, reduced to its essence, the government's strongest arrow in its quiver was faulty, because its strength derived only from a faulty application of the law by the ALJ.

At best, all that the government can reasonably contend is that there was "some evidence" to justify its position. But, as our case law dictates, this is not enough to conclude that the government was substantially justified. *See, e.g., Tressler v. Heckler*, 748 F.2d 146, 150 (3d Cir.1984). Although it is true that Dr. Wachs stated that "obviously [Edge] has not had a major stroke," app. at 42a, and that the treating physician, Dr. Brabson, reported that there were no residuals, no neurological abnormalities, and no weakness of the extremities, br. for Secretary at 3, this so-called evidence was woefully inadequate. Dr. Wachs was not asked for an opinion on disability yet reported that Edge suffered "a transient ischemic attack affecting the brainstem, secondary to atherosclerosis," app. at 42a, with a question of residual sensory deficit. App. at 157a. Moreover, Dr. Brabson concluded that Edge "probably at age 60 will no longer be able to carry out gainful employment in the future." App. at 44a.

Here, as in *Tressler*, "adherence to a strict standard of substantial justification is critically important when a case involves a plaintiff who succeeded on the first review, but because of government actions was forced through several more adjudications, at his own expense." *Tressler*, 748 F.2d at 150. We conclude that the government's position was not substantially justified.

## IV.

Accordingly, we will reverse the judgment of the district court and remand these proceedings for a determination of an appropriate attorney's fee in behalf of the claimant, George Edge. The district court shall calculate and award fees for time spend litigating this case on the appellate as well as on the district court level. *See Stokes v. Bowen*, 811 F.2d 814, 817 (3d Cir.1987) (citing *Guido v. Schweiker*, 775 F.2d 107, 110 (3d Cir.1985)).