**Michelle DE WALT, Plaintiff,**

v.

**Louis B. SULLIVAN, Secretary Department of Health and Human Services, Defendant.**

**Civ. A. No. 83–1194(JFG).**

United States District Court, D. New Jersey.

Jan. 18, 1991.

Polonsky & Polonsky by Alan H. Polonsky, Collingswood, N.J., for plaintiff.

U.S. Atty. by Susan J. Steele, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

GERRY, Chief Judge:

Plaintiff has filed an application for payment of attorney's fees under section 2412(d) of the Equal Access To Justice Act (EAJA), 28 U.S.C. § 2412(d), based upon an action filed on her behalf in 1983 which ultimately led to an award of Supplemental Security Income (SSI) benefits by an administrative law judge (ALJ) on March 7, 1990. Defendant opposes the award of fees and, in the alternative, argues that the hourly rate sought is excessive.

I. *Facts and Procedural History*

This case has a long history. We draw the following factual and procedural background from the court's Letter Opinion (Op.) of July 13, 1989: "Plaintiff was 27 years of age at the time of her initial administrative hearing [in 1982] and has a high school education. She was last employed from July through December of 1975 as an assembly line worker at Tyco Corporation." *Id.* at 2.

Plaintiff originally filed an application for [SSI benefits] ... on April 5, 1982. Her claim was disapproved initially and upon reconsideration. A hearing before ALJ Paul H. Teitler was held on August 18, 1982, at which the plaintiff appeared *pro se*. The ALJ found that the plaintiff was ineligible for SSI under 42 U.S.C. §§ 1381, 1381a, and 1382c. Plaintiff appealed, and on January 19, 1983, the Appeals Council then remanded the case to the ALJ for a *de novo* hearing.

*Id.* at 1.

Plaintiff then filed this action on May 26, 1983. On March 13, 1984, the court remanded for the purpose of locating plaintiff's claims folder. A second hearing was held before the ALJ on August 23, 1984, at which plaintiff again appeared without counsel. On January 29, 1985, the ALJ found that DeWalt was not disabled as defined by the Social Security Act at any time relevant to the application. The decision became final when the Appeals Council adopted the findings of the ALJ.

*Id.* Plaintiff then appealed to this court, but also filed another application for benefits. We remanded the case for further findings.

Upon remand plaintiff was awarded SSI benefits by an ALJ on March 7, 1990. The ALJ found that plaintiff was disabled as of July 17, 1982, based on her having satisfied as of that date the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 10.10. Section 10.10A addresses obesity and a history of pain and limitation of motion in any weight bearing joint or spine, associated with arthritis. *Id.*

II. *Legal Analysis*

a) Standard for Award of Fees Under EAJA

EAJA entitles plaintiff to an award of fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). "The burden of proving the statutory concept of substantial justification is on the government." *Edge v. Schweiker*, 814 F.2d 125, 128 (3d Cir.1987).

The Supreme Court settled the definition of "substantially justified" in *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The term means

"justified in substance or in the main"— that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Id.* The court cited *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 593 (3d Cir.1984) as one of those cases that adhere to "reasonable basis both in law and fact." *Id.*

*Citizens Council* relied on the articulation of a "reasonable basis in both law and fact" first set forth by the Third Circuit in *Dougherty v. Lehman*, 711 F.2d 555, 564 (3d Cir.1983). The government must:

First, show that there is a reasonable basis in truth for the facts alleged in the pleadings. If no such basis for the government's factual allegations exist, then the government's position may well be held not to be "substantially justified."

Second, the government must show that there exists a reasonable basis in law for the theory which it propounds. This is not to say that the government need demonstrate that there is a substantial probability that the legal theory advanced by it will succeed.

Finally, the government must show that the facts alleged will reasonably support the legal theory advanced. Thus, having met these requirements, if the government's legal theory, as applied to the facts, reasonably supports the Secretary's position, even though the government may not have ultimately prevailed, then the government will have proven that the "position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).

*Id.* In sum, "[t]o meets its burden, the government must show a reasonable basis

in truth for the facts alleged, a reasonable basis in law for the theory it propounds, and a reasonable connection between the facts alleged and the legal theory advanced." *Edge v. Schweiker,* 814 F.2d at 128.

The government's "position" refers "to both the litigation position taken by the agency and the agency's conduct that was the subject of the litigation." *Citizens Council of Delaware County v. Brinegar,* 741 F.2d at 593; *Dougherty v. Lehman,* 711 F.2d 555, 563 n. 12 (3d Cir.1983); *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d 700, 706–12 (3d Cir.1983) (Gibbons, J., opinion announcing the judgment of the court); *id.,* at 714–17 (Thompson, J., concurring).

b) The Government's Position Was Not "Substantially Justified"

▮ Upon remand the ALJ found that plaintiff, "[a]s of July 17, 1982 ... weighed in excess of 258 pounds.... [Her] current weight is 425 pounds. The record reflects reports from Herbert Fichman, M.D., extending back to July 1982, documenting the fact that the claimant was suffering from osteoarthritis of the lumbosacral spine.... [Her] condition continues to be documented as ... consistent with the diagnosis of Dr. Fichman, in July 1982.... [B]y virtue of [her] massive obesity and a history of osteoarthritis of the knees and lumbosacral spine, ... the claimant does in fact meet an appropriate listing found in Listings of Impairments in Appendix 1, Subpart P, Regulation No. 4." Decision of Alan M. Neff, ALJ, of March 7, 1990, at p. 2.

Defendant argues that "there was no evidence to conclude that plaintiff was suffering from arthritis of a weight bearing joint or the spine," and therefore "the Secretary reasonably concluded that plaintiff was not disabled." Defendant's Brief at 7. Moreover, to the extent the ALJ found plaintiff to have been disabled since July 1982, "the evidence upon which the [ALJ] awarded benefits was not, for the most part, compiled until after remand," and "plaintiff was found to be eligible for benefits based, at least, in part upon this new evidence. Accordingly, the Secretary was substantially justified in finding that plaintiff was not disabled." *Id.*

We disagree. The basis upon which the ALJ determined plaintiff to have been disabled was her obesity, coupled with a history of arthritis in her spine and knees. The ALJ relied upon a report by Dr. Fichman from 1982 that had always been part of the record to establish both obesity and arthritis in plaintiff's spine. The ALJ relied upon later medical reports submitted by Dr. Maslow and Dr. Shoemaker, but only to confirm Dr. Fichman's earlier findings regarding obesity and arthritis of the low back. The later reports referred also to arthritis in the knees, but the findings as to obesity and spinal arthritis were sufficient without more to meet the requirements of section 10.10. To meet that listing, "it must be established that the claimant suffered a history of pain and limitation of motion of any weight bearing joint *or spine.*" *Id.* at 8 (emphasis added). Dr. Fichman's 1982 report and plaintiff's own testimony as to pain support the ALJ's finding of disability. Thus, to the extent that new evidence was considered, it merely confirmed former evidence sufficient in itself to demonstrate disability.

The question is whether the presence of such record evidence, long since available to the Secretary, which was found on remand to support a finding of disability, now bars a conclusion that the government's position was "substantially justified." We find that it does.

The court has been able to discover only one other case involving the award of EAJA fees where the claimant suffered from obesity and was found on remand to be disabled pursuant to section 10.10. *See Rosado v. Bowen,* 823 F.2d 40 (2d Cir. 1987). In *Rosado,* the court concluded that the government's position was substantially justified, because the award of disability benefits upon remand was based on new evidence, which "was far stronger and more detailed than that presented at the first hearing." *Id.* at 43. In contrast, "the evidence of her impairment was weak and

undeveloped at the time of the initial hearing." *Id.*

Here, the evidence available to the ALJ at the first hearing in 1982 was the same evidence upon which ultimately claimant was awarded disability benefits in 1990. The government's position was not substantially justified.

### c) Hourly Rate of Fees Requested

Under the EAJA, "[t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $75 per hour unless the court determines that *an increase in the cost of living* or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (emphasis added).

■ Plaintiff seeks an award of $3,808.56 in EAJA fees, based upon 28 hours of work by her counsel at an hourly rate of $136.02. Plaintiff derives this hourly rate by increasing the statutory $75 rate according to inflation rates listed in the Consumer Price Index for all Urban Consumers (CPI–U). The controversy arises from plaintiff's choice of categories within the CPI–U. Plaintiff has chosen the categories of "Other Services" and "Legal Services" (a category within "Other Services" until December 1986, but since then a separate category). The government prefers "All Items"—by all accounts the most frequently applied category, and one that

yields a lower rate. *See Animal Lovers Volunteer Asso. v. Carlucci,* 867 F.2d 1224, 1227 (9th Cir.1989); *Ramon–Sepulveda v. Immigration & Naturalization Service,* 863 F.2d 1458, 1463 (9th Cir.1988); *Dabone v. Thornburgh,* 734 F.Supp. 195, 204 (E.D.Pa.1990).[1] We note, however, that the category of the CPI–U to be used was not at issue in any of these cases. Indeed, as another district court has observed, "[t]he case law on this issue is sparse." *Ofray v. Secretary of HHS,* 741 F.Supp. 53, 54 (W.D.N.Y.1990).

By the government's reckoning the "All Items" index yields an hourly rate as of April 1990 of $105.91, or roughly $30 an hour less than the rate sought by plaintiff. The fee sought here represents an increase of about 81% for the period October 1981 to April 1990, while the "All Items" increase is only 41% for the same period. Thus, the inflation rate for the combined categories plaintiff seeks to apply is about twice that for "All Items," and yields an hourly fee about 30% higher than "All Items."[2]

Plaintiff argues that the higher rate is appropriate because "the basis for payment of funds under the EAJA is to reimburse the client for fees to be paid to an attorney," and "the fee that must be paid to an attorney has risen disproportionately to other costs," with the result that the "EAJA award covers an increasingly small portion of the fee normally to be charged [by] an attorney in such cases." Here, "any fee award under EAJA serves to directly reduce any fee that must be paid by

---

1. Plaintiff does not argue that absent approval of the higher rate, it will be increasingly difficult for plaintiffs to obtain adequate representation in these social security matters. Were plaintiff relying on the statute's "special factor" prong to obtain a higher hourly rate, her burden would be much greater. In the posture of a "special factor," the Fifth Circuit observed:

> The district court should award an increased rate only if it is persuaded by convincing evidence: (1) that the number of competent lawyers who will handle social security disability cases is so limited that individuals who have possibly valid claims are unable reasonably to secure representation, *and* (2) that by increasing the fee, the availability of lawyers for these cases will actually be increased.

*Baker v. Bowen,* 839 F.2d 1075, 1085 (5th Cir. 1988) (emphasis original). The showing required under *Baker* is daunting, and it may be for that reason that plaintiff seeks the same result by means of the "Legal Services" category.

2. Plaintiff has advised the court that the fee under "All Items" rate increased another .9% for July to August 1990, while the "Legal Services" rate did not. This lowers slightly the percentage difference increase between "All Items" and the combination of "Other Services" and "Legal Services" sought to be applied by plaintiff. Plaintiff's Letter of November 28, 1990.

the [p]laintiff for the costs of representation in this matter." Thus, "the rates charged by attorneys [are] the only logical basis for an adjustment in fees based upon changes in the 'cost of living'." Plaintiff's Reply Brief at 7–8.

The government argues that use of the "All Items" index "has been the customary practice in the past," and that the index offered by plaintiff creates "an arbitrary, artificially high hourly rate which is not representative of general inflation and circumvents the intent of the cost-of-living allowance provided in the EAJA." Defendant's Brief at 10.

### 1. Case Law On the Appropriate CPI–U Category

Plaintiff presents the question of which CPI category is appropriate under the EAJA as one of first impression in this Circuit. We agree. The court has been unable to discover any case in which the Third Circuit has addressed which CPI sub-index courts are to use for cost of living increases under the EAJA.

The Third Circuit has "expressly approved the use of the Consumer Price Index in determining cost of living adjustment[s] under the Equal Access to Justice Act." *Allen v. Bowen,* 821 F.2d 963, 967 (3d Cir.1987), *citing Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency,* 703 F.2d at 700, 713. We measure the cost of living adjustment to the $75 hourly rate from 1981. *Id.* In *Allen,* the rate derived from the CPI was undisputed, and the court did not discuss the propriety of using one or more categories from the CPI. *Id.,* 821 F.2d at 968.

In *Malick v. Heckler,* No. 85–4946, 1989 WL 831, 1989 U.S.Dist. LEXIS 68 (E.D.Pa. Jan. 9, 1989), the court rejected "All Items"

in favor of " 'services,' a category into which legal services presumably falls." *Id.,* 1989 WL 831, 1989 U.S.Dist. LEXIS 68 at *17. Without explaining why, the court found "this a more accurate number to apply." *Id.* The fee amount awarded represented a 38.2% increase over the $75 fee, only 15% higher than the "All Items" index provided, and netted a fee of $103.50 per hour (less even than the amount the government submits applies here under "All Items").

*Ofray* is the only reported decision on point that has come to the court's attention. The court in *Ofray* rejected the "Other Services" index in favor of "All Items."[3] Plaintiff argued there, as here, that the "Other Services" index "more accurately reflects the cost of legal services." *Id.,* 741 F.Supp. at 54. In rejecting plaintiff's argument, the court noted first that "the 'All Items' index has generally been used in the past".[4] Second, Congress had not prescribed the use of any particular index. On the contrary, while "neither the statute itself nor the legislative history indicates explicitly that Congress meant for a particular index to be used, ... the use of the broad term 'cost of living' seems to suggest that Congress had in mind increases in the overall cost of living, rather than increases in a specific category of the CPI. Presumably, if Congress had intended that a specific index be used, it would have said so." *Id.* The court also noted that Congress could have amended the statute at the time of its reenactment in 1985 to provide for use of a particular index, but had not done so. *Id.* at 54–55. In refusing to depart from the use of "All Items," the court concluded:

> there is nothing to suggest that Congress intended that any particular index be used. The statute is framed in broad,

---

**3.** The one case in which the "Other Services" index was approved by a district court was *Davie v. Sullivan,* Civ–88–1361T (W.D.N.Y. February 9, 1990). However, as noted by the court in *Ofray,* "the Government in *Davie* did not oppose the rate sought by plaintiff, so the court was not squarely faced with the issue, and did not address it in its written decision." 741 F.Supp. at 54. We can thus draw no insight from *Davie* on the question before us.

**4.** The court in *Ofray* also cited a magistrate's opinion in *Torres v. Sullivan,* Civ. No. B–86–431, 1990 WL 265953 (D.Conn. January 9, 1990), affirmed by the district court, which found that "plaintiff has offered no compelling reason to deviate from" the accepted practice of using the "All Items" index. *Torres,* Op. at 3; *Ofray,* 741 F.Supp. at 54. Unfortunately, the magistrate's opinion does not state what reasons, if any, plaintiff offered in favor of abandoning the "All Items" index.

general terms, and I therefore decline to read into it a requirement that a particular category of the CPI be used.

*Id.* However, that "All Items" has generally been used in the past, or that Congress did not intend that any particular index be used, does not explain why "All Items" is the appropriate index, or why "Other Services" is not. And while there is some logic to the equation drawn between "the broad term 'cost of living' . . . [and] increases in the overall cost of living" (which favors "All Items" over "Legal Services"), *Ofray* does not develop that logic but relies instead on a vague sense of congressional intent which we do not find persuasive.

In sum, we do not find *Ofray, Malick, Davie* or *Torres* illuminating on why one index is more appropriate than the other, and so must seek our own way to answer the question.

### 2. *The Purpose In Awarding Counsel Fees Under the EAJA*

In *Natural Resources Defense Council, Inc. v. U.S. Environmental Protection Agency*, 703 F.2d 700, 713 (3d Cir.1983), the Third Circuit described the purpose of awarding attorney's fees to prevailing parties under the EAJA: "The purpose of the statute was to encourage challenges to agency action, and the cost of living adjustment provision seems designed to provide a disincentive to agencies to prolong the litigation process." *See Animal Lovers,* 867 F.2d at 1227 (disincentive to suit created by enormous resources of federal government was rationale for EAJA); H.R.Rep. No. 1418, 96th Cong., 2d Sess., at 5–6 *reprinted in* 1980 U.S.Code Cong. & Admin.News p. 4984.

The legislative history states the purpose of EAJA fees as follows: The statute

reflects a desire to limit the award of fees to situations where participants have a concrete interest at stake but nevertheless may be deterred from asserting or defending that interest because of the time and expense involved in pursuing administrative remedies. . . . [T]o insure that individuals will actively seek to protect their rights vis-a-vis the government, they must have the opportu-

nity to recover the costs of litigating. An administrative remedy in these circumstances cannot be truly effective unless a prevailing party is made whole. *Id.* at 4993.

The court must decide which index here—one tied to across-the-board inflation, or one tied directly to the cost of legal services—better serves these purposes as a "cost of living adjustment."

If the fee rate serves to "encourage challenges to agency action," it would seem that the higher the rate, the better. On the other hand, if the same number of challenges would result from a $200 an hour rate as from a $100 rate, the purpose of the statute is served as well at $100 as at $200. If the "cost of living adjustment" acts as a disincentive to the government to prolong litigation, then the higher the rate, the greater the disincentive for delay (and perhaps the greater overall scrutiny of the litigation). What's plain is that neither aspect of the statute's purpose identified by the Third Circuit is disserved by authorizing use of an CPI category that yields a higher fee rate, and the statute's purpose may be better served by the higher rate.

However, we would be remiss to overlook that Congress did set a limit of $75 an hour, and the provisions to depart from that figure do not undermine the fact that Congress was concerned about the public fisc, as well as the factors identified by the court in *Natural Resources Defense Council.* Thus, another court has written that the EAJA fee provision "serves a dual purpose: to ensure adequate representation for those who need it *and* to minimize the costs of this representation to taxpayers." *Baker,* 839 F.2d at 1083. The *Baker* court went on to describe how to accommodate twin purposes that might conflict:

In order to satisfy both goals of the provision, however, rates should be increased only to the extent necessary to ensure an adequate source of representation and should never exceed the *percentage by which the market rate attorneys' fees have increased since the statute was enacted in 1981.* At that time, Congress believed $75 was a sufficient

rate for awards under the Act. By permitting cost-of-living increases, Congress intended to provide attorneys at most with an hourly rate in present-day dollars commensurate with seventy-five dollars in 1981, but no more.

*Id.*, 839 F.2d at 1084 (emphasis added). The *Baker* court's formula sets a ceiling on attorneys' fees that is geared to the increase in the "market rate" since 1981, with $75 as the benchmark. The "Legal Services" category provides a measure of that increase. And if the intention is to pay a rate equal to what $75 would have purchased in the legal market in 1981, the "Legal Services" rate is consistent with "an hourly rate in present-day dollars commensurate with seventy-five dollars in 1981." (Beans, corn and hamburger may have appreciated less than an hour of a lawyer's time, but plaintiffs must shop in the legal market, not the supermarket.) Approving the "Legal Services" category protects a plaintiff's ability to obtain legal representation on par with the legal representation that could have been obtained in 1981 for $75 per hour.

The only purpose that may not be served by approval of the higher rate is minimizing the costs of legal representation to taxpayers. That purpose is clearly expressed in the statute's ceiling on fees. As noted above, if use of "Legal Services" gains broad acceptance over "All Items", then fee awards will increase by almost 30%, at current rates. However, it is also possible that the increase under "Legal Services" will not always be greater than under "All Items". Higher or lower, the logic of using "Legal Services" rather than "All Items" still obtains. And to the extent that "Legal Services" now yields a higher rate, that higher figure serves the other purposes of the statute at least as well—and perhaps better—than the lower rate under "All Items".

There can be little doubt that, for their respective years, the "Other Services" and "Legal Services" categories better reflect the increased cost of *legal services* than does "All Items", which is a composite of general inflation increases. The question really is whether it is appropriate to equate

the statute's general language involving "an increase in the cost of living" with the quite specific (and, for now, higher) increase in the cost of attorneys. Given the number of cases in which EAJA fees are available, the choice is of great practical significance.

The court concludes that the logical course, one that comports with the above purposes of the Equal Access to Justice Act, is to adopt the use of "Other Services" and "Legal Services" as reference categories under the Consumer Price Index, in the manner set forth by plaintiff. We reject the government's position that "All Items" is the appropriate category for measuring "an increase in the cost of living," when the "cost" involved is a particular cost, that being the cost of obtaining legal representation. Accordingly, we will award plaintiff the amount she seeks, $3,808.56, based on her attorney's 28 hours of work at an hourly rate of $136.02.