**Annie Bernice HARRIS, Plaintiff,**

v.

**Louis SULLIVAN, in his Official Capacity as Secretary of the United States Department of Health and Human Services, Defendant.**

**No. 87 Civ. 4376 (MGC).**

United States District Court,
S.D. New York.

Sept. 4, 1991.

---

Federal Litigation Clinic, New York City by David Stroh Buckel, for plaintiff.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Sapna V. Raj, for defendant.

## OPINION AND ORDER

CEDARBAUM, District Judge.

■ Plaintiff sued pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for review of defendant's denial of disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. The parties stipulated that plaintiff is entitled to the benefits denied her, and on February 20, 1991, an order to pay those benefits was entered. Plaintiff now moves for attorney fees pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412. Defendant concedes that plaintiff is entitled to attorney fees, but challenges the hourly rate plaintiff seeks as unreasonable and contests plaintiff's request for fees for the preparation of the fee request on the ground that plaintiff's request for an exorbitant hourly rate unreasonably protracted these proceedings, 28 U.S.C. § 2412(d)(2)(D). After reviewing the language and legislative history of the EAJA, I conclude that plaintiff is entitled to attorney fees at the rate she proposes and for her attorney's preparation of the motion for fees.

The EAJA provides that an award of reasonable attorney fees "shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living ... justifies a higher fee." 28 U.S.C.A. § 2412(d)(2)(A).

The Second Circuit has held that cost-of-living adjustments of the $75 maximum hourly rate should be calculated from October 1, 1981, the effective date of the EAJA. *Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702 (2d Cir.1987). The Second Circuit has also approved the use of the Consumer Price Index ("CPI") to measure increases in the cost of living, *Id.*, but it has not addressed whether any particular category of that index is more appropriate than others. *Ofray v. Secretary of Health and Human Services*, 741 F.Supp. 53, 54 (W.D.N.Y.1990).

The CPI tracks increases in the cost of selected goods and services. It also mea-

sures increases in weighted averages of the cost of certain combinations of goods and services, including a weighted average of the cost of all the goods and services listed in the CPI. The average of all the goods and services is called "All Items." "All Items" is broken down into seven subcategories: "Food and Beverages," "Housing," "Apparel and Upkeep," "Transportation," "Medical Care," "Entertainment," and "Other Goods and Services." "Other Goods and Services" is further subdivided into several categories, one of which is "Personal Expenses." "Personal Expenses" includes legal services. Before December, 1986, there was no separate index for legal services alone. The cost of legal services was a component of the weighted "Personal Expenses" average. Since December, 1986, the CPI has established a separate category for legal services.

The parties agree that the maximum hourly attorney fee of $75 should be increased to reflect the increase in the cost of living since 1981, but they disagree about which category of the CPI should be used to make the adjustment. Defendant argues that the "All Items" category should be used, not because it accurately reflects the cost of legal services, but because the reference in § 2412 to the "cost of living" indicates that "Congress had in mind increases in the overall cost-of-living." Defendant's Memorandum of Law, p. 5. Using the "All Items" index would result in a maximum hourly rate of $115.50. Plaintiff argues that the cost of legal services is the most relevant component of the cost of living and suggests the use of the "Legal Services" category from December, 1986 through 1991 and the "Personal Expenses" category for the period from October, 1981 through December, 1986. Defendant does not dispute that these indexes reflect the increase in the cost of legal services more accurately than the "All Items" index. Using these indexes produces a maximum hourly rate of $150.26 if monthly figures are employed and $147.47 if annual figures are used. Plaintiff requests an award of attorney fees at an hourly rate of $147.47.

The cases cited by the parties provide some useful background, but none is controlling. In most cases where the $75 maximum rate has been adjusted to account for the cost of living, the parties have not disputed the application of a particular category of the CPI, and the court has not discussed alternative categories. In some of these cases, the "All Items" index has been used. *See, e.g., Ramon–Sepulveda v. INS,* 863 F.2d 1458, 1463 (9th Cir.1988); *Dabone v. Thornburgh,* 734 F.Supp. 195, 204 (E.D.Pa.1990). In *Davie v. Sullivan,* No. Civ–88–1361T, 1990 WL 274630 (W.D.N.Y. February 9, 1990), the court used the "Other Services" category to calculate an hourly rate, apparently because the Secretary of the Department of Health and Human Services did not object. *Ofray,* 741 F.Supp. at 54.

The few courts that have been presented with a dispute between parties arguing for the application of different categories of the CPI have reached different results, although a greater number have applied the "All Items" index. In *Ofray v. Secretary of Health and Human Services,* the court adopted the argument advanced by defendant here that the "All Items" index is more appropriate than either the "Other Services" or "Personal and Educational Services" indexes because "the use of the broad term 'cost of living' seems to suggest that Congress had in mind increases in the overall cost of living, rather than increases in a specific category of the CPI." 741 F.Supp. at 54. The court also stated that the legislative history revealed "nothing to suggest that Congress intended that any particular index be used." *Id.,* at 54–55. In *Torres v. Sullivan,* Civil No. B–86–431, 1990 WL 265953 (D.Conn. filed January 9, 1990), an opinion of the magistrate judge stated, without citing any cases, that courts have consistently employed the "All Items" index in adjusting the $75 maximum rate. The magistrate judge applied that index because the plaintiff "offered no compelling reason to deviate from that practice...." *Id., slip op.* at 3. Defendant also cites *Shaw v. Sullivan,* Civil No. N–84–648 (D.Conn. filed March 6, 1990), in which the court chose the "All Items" in-

dex over "Personal Expenses" although without any discussion of the legislative history of the EAJA.

In contrast, a number of courts have held that other categories of the CPI should be applied rather than the "All Items" index. The court in *Malick v. Heckler*, 1989 WL 831, 1989 U.S.Dist. LEXIS 68, Civil No. 85–4946 (E.D.Pa. filed January 9, 1989), held that using the "Services" category is "more accurate" than using "All Items." The court did not elaborate on this conclusion. In *De Walt v. Sullivan*, 756 F.Supp. 195 (D.N.J.1991) after reviewing the legislative history and the case law, including *Ofray*, *Torres*, and *Malick*, the court applied the "Other Services" index for the period up to December, 1986 and the "Legal Services" index thereafter. The court reasoned that the EAJA is concerned specifically with the cost of legal representation, not the general cost of living. *Id.*, at 201. Because the cost of legal services may increase more or less than the overall cost of living, "[a]pproving the 'Legal Services' category protects a plaintiff's ability to obtain legal representation on par with the legal representation that could have been obtained in 1981 for $75 per hour." *Id.* Plaintiff relies principally on *De Walt*.

The one court of appeals that has discussed this issue remanded to the district court the determination of the appropriate increase in the maximum rate. *Baker v. Bowen*, 839 F.2d 1075 (5th Cir.1988). In *Baker*, the Fifth Circuit stated its views on the appropriate maximum rate:

> [R]ates should be increased only to the extent necessary to ensure an adequate source of representation and should never exceed the percentage by which the market rate attorneys' fees have increased since the statute was enacted in 1981. At that time, Congress believed $75 was a sufficient rate for awards under the Act. By permitting cost-of-living increases, Congress intended to provide attorneys at most with an hourly rate in present-day dollars commensurate with seventy-five dollars in 1981, but no more.

*Id.*, at 1084. Although the Fifth Circuit declined to provide a formula for adjusting the maximum rate, it recognized that the maximum rate may be increased by the percentage by which the prevailing market rate increased.

The language of the statute supports plaintiff's position that the maximum hourly rate should be increased to reflect the increase in legal fees, not the cost of living generally. Section 2412 provides that, as a general matter, an award of attorney fees "shall be based upon prevailing market rates for the kind and quality of the services furnished...." 28 U.S.C.A. § 2412(d)(2)(A). The limit on the hourly rate must be read together with this general rule. Thus, if the court "determines that an increase in the cost of living ... justifies a higher fee," *Id.*, the $75 maximum should be increased in proportion with prevailing market rates.

The legislative history of the EAJA also shows that Congress was concerned with the cost of legal services, not the overall cost of living. *De Walt*, 756 F.Supp. at 200–01. The congressional debates and reports on the bill that became the EAJA demonstrate Congress's concern about the deterrent effect of legal fees on the ability and willingness of individuals and small businesses to challenge arbitrary or unjustified governmental action. *Commissioner, INS v. Jean*, —— U.S. ——, ——, 110 S.Ct. 2316, 2321–23, 110 L.Ed.2d 134, 145–46 (1990); *Trichilo*, 823 F.2d at 707. The report of the House Judiciary Committee explained the problem the bill was intended to remedy as follows:

> For many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process. When the cost of contesting a Government order, for example, exceeds the amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

H.Rep. No. 1418, 96th Cong., 2d Sess. 9 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4988. The record of the congressional debates on the bill contains numerous references to the

deterrent effect of legal costs on the ability of individuals and businesses to challenge governmental regulations and decisions. 126 Cong.Rec. 27,681, 28,106, 28,652–54, 28,846. Senator Weicker expressed a typical sentiment when he stated that passage of the bill was "of extreme importance to small businesses, and others, that are deterred from bringing legal actions against the United States or defending themselves in actions brought against them by the United States, because of the extreme cost involved in securing their rights in such proceedings." *Id.*, at 28,106.

■ The maximum hourly rate should be increased to take into account the prevailing market rate for legal services in order to counteract the deterrent effect of legal costs to the degree Congress has deemed necessary. *De Walt*, 756 F.Supp. at 201; *cf. Baker v. Bowen*, 839 F.2d at 1084. Congress determined that hourly rates of up to $75 might be necessary to obtain adequate legal services at the time the EAJA took effect. The "Personal Expenses" and "Legal Services" indexes of the CPI indicate that legal services that could have been purchased in 1981 for $75 an hour would now cost $147.47. To limit attorney fees to an hourly rate of $115.50 by applying the "All Items" index of the CPI would allow the relatively rapid increase in the cost of legal services since 1981 to erode the level of protection Congress provided to individuals and businesses aggrieved by governmental action. In order to counteract the deterrent effect of the cost of legal services to the same degree that Congress deemed appropriate in 1981, a court should adjust the maximum rate using the most accurate indicators of the increase in the cost of legal services. Accordingly, I apply the "Personal Expenses" index for the period from October, 1981 through November, 1986 and the "Legal Services" index from December, 1986 onward. The resulting $147.47 hourly rate is reasonable in light of the evidence plaintiff has submitted regarding market rates and her counsel's extensive experience in social security litigation.

■ Plaintiff is also entitled to attorney fees for her counsel's preparation of the fee request. It is well-settled that fees may be awarded for time spent litigating fee requests. *Commissioner, INS v. Jean*, —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134; *Trichilo*, 823 F.2d at 707. Plaintiff's request for an hourly rate of $147.47 is based on a formula similar to those approved in several other cases, which plaintiff has cited. In addition, as noted above, on at least one occasion the Secretary of the Department of Health and Human Services has not objected to a rate based on the "Other Services" category of the CPI. *Ofray*, 741 F.Supp. at 54. Thus, defendant's contention that plaintiff's request for an hourly rate of $147.47 unreasonably protracted these proceedings borders on the frivolous.

Defendant is directed to pay $1,010.17 to Harlem Legal Services, Inc. for the 6.85 hours plaintiff's counsel worked on this matter while employed there and $3757.54 to the Federal Litigation Clinic for the 25.48 hours plaintiff's counsel worked on this matter since he has been employed there.

SO ORDERED.