Gennie SULLIVAN, Plaintiff–Appellee,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant–Appellant.

No. 91–2176.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1991.

Decided Feb. 25, 1992.

Mary Koehmstedt Doyle, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Michael Jay Singer, Civ. Div., U.S. Dept. of Justice, Washington, D.C., and E. Bart Daniel, U.S. Atty., Greenville, S.C., on brief), for defendant-appellant.

John Bagnel Duggan, Duggan, Reese & McKinney, P.A., Greer, S.C., argued, for plaintiff-appellee.

Before SPROUSE and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.

OPINION

LUTTIG, Circuit Judge:

Appellant, Louis W. Sullivan, Secretary of the Department of Health and Human Services, challenges the district court's use of the "personal expenses" subcategory of the Consumer Price Index (CPI), rather than the CPI itself or a more general cost-of-living index, in the calculation of appellee's fee award under the Equal Access to Justice Act. We agree with appellant that the district court lacked statutory authority to base appellee's attorney fee award on

the personal expenses subcategory. We therefore vacate the district court's fee award and remand for further proceedings.

## I.

Appellee applied for Social Security disability benefits on February 20, 1987, alleging that she was disabled due to back trouble and carpal tunnel syndrome. *See* J.A. at 6. Her application was denied by the Department of Health and Human Services. *See id.* After the district court reversed the Secretary's final decision denying appellee benefits and remanded the case for an award of benefits, *see id.,* appellee sought costs and fees under the Equal Access to Justice Act (EAJA) as a civil litigant who had prevailed over the United States. *See* 28 U.S.C. § 2412(d). The district court held that the "position of the United States" in denying appellee benefits was not "substantially justified," *id.* § 2412(d)(1)(A), and therefore that appellee was entitled to recover costs and fees. *See* J.A. at 10.

In calculating appellee's award of attorney fees under section 2412(d)(2)(A), the court increased the $75 per hour statutory maximum fee by 91.21 percent, the percentage increase in the costs of personal expenses between 1981 and August 1990 as reflected in the "personal expenses" subcategory of the Consumer Price Index. *See* J.A. at 15–17. The "personal expenses" subcategory, which is found at the fourth level of detail in tables interpreting the CPI,[1] reflects changes in the costs of legal, financial, and funeral services. *See* CPI Report, *supra,* at 15, 20, 30, 35, 72, 77, 84, 89.[2] The district court reasoned that the "personal expenses" subcategory should be used instead of the "more general overall [CPI] index" in calculating the award because the subcategory more accurately reflects changes in the cost of legal services. J.A. at 14.

The Secretary objected to the court's use of the "personal expenses" subcategory to increase appellee's attorney fee award. He argued that the court was statutorily limited to the use of the CPI for All Urban Consumers (CPI–U), if it wished to increase appellee's award above the $75 per hour attorney fee ceiling established in section 2412(d)(2)(A). Adjustment of counsel's fees using the CPI–U would have reduced appellee's attorney fee award by about one-third. *See* Appellant's Br. at 26 n. 22.[3]

Before this court, the parties appear to agree that the "personal expenses" subcategory does not purport to measure the general cost of living[4] but that it is a more

---

1. *See* United States Department of Labor, Bureau of Labor Statistics, CPI Detailed Report 15, 20, 30, 35, 72, 77, 84, 89 (Oct.1991) [hereinafter "CPI Report"].

   The CPI, long known as the "Cost of Living Index," is a broad index that measures "the average change in prices over time in a fixed market basket of goods and services" for "wage earners and technical workers, ... professional, managerial, and technical workers, the self-employed, short-term workers, the unemployed, and retirees and others not in the labor force." *Id.* at 2; *see also* United States of Department of Labor, Bureau of Labor Statistics, BLS Handbook of Methods 158 (April 1988) (Bulletin 2285) (defining the CPI as "a measure of the price change in a fixed market basket of consumption goods and services of constant quantity and quality bought on average by urban consumers").

   The CPI indexes seven expenditure categories: food and beverages, housing, apparel and upkeep, transportation, medical care, entertainment, and other goods and services. *See* CPI Report, *supra,* at 1. The "other goods and services" expenditure category includes a "personal and educational expenses" category, which in turn includes the "personal expenses" subcategory.

2. Since 1986, the Bureau of Labor Statistics has produced and reported separate subindex for legal services within the "personal expenses" subcategory. *See id.* We assume for purposes of this opinion, however, that the broader "personal expenses" subcategory provides a roughly accurate measure of increases in the cost of legal services.

3. CPI–U increased 47.1 percent from October 1981, when EAJA was enacted through October 1991. *See* CPI Report, *supra,* at 67. During almost the same period, December 1981 through October 1991, the personal expenses subcategory increased 107.7 percent. *See id.* at 72.

4. Expenses within the "personal expenses" subcategory represent a very small amount of the overall cost of living as measured by CPI–U. In December 1986, the entire "personal expenses" subcategory comprised only 1.171 percent of the CPI–U, and legal services in particular comprised only 0.432 percent. *See* BLS Handbook of Methods, *supra,* at 189.

accurate measure of inflation in the cost of legal services than is CPI–U. The sole issue on appeal is whether the district court abused its discretion in using the "personal expenses" subcategory of the CPI to adjust appellee's attorney fee award under 28 U.S.C. § 2412(d).[5] *See Pierce v. Underwood,* 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988). We conclude that section 2412(d)(2)(A) requires the use of a broad cost-of-living index and thus that the district court did abuse its discretion in relying upon the "personal expenses" subcategory.

## II.

■ Appellee was eligible for an award of "fees and other expenses" under 28 U.S.C. § 2412(d)(1)(A) as a "prevailing party" in a "civil action ... brought ... against the United States" in which "the position of the United States was [not] substantially justified." "[F]ees and other expenses" under section 2412 include "reasonable attorney fees." *Id.* § 2412(d)(2)(A). The EAJA specifies that the amount of a fee award is to be determined as follows:

> The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, *except that ...* attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the *cost of living ...* justifies a higher fee.

*Id.* (emphasis added). The statute thus prescribes use of the "prevailing market rate" for determining the allowable fees for all nonlegal services and establishes a $75 per hour ceiling on attorney fees, sub-

ject to an upward adjustment for cost-of-living increases.

Appellant argues that section 2412(d)(2)(A) authorizes a court to award attorney fees in excess of the $75 statutory ceiling only in an amount equal to cost-of-living increases and thus prohibits adjustments, such as the district court made, based upon data that more specifically and accurately measure increases in the cost of legal services. *See* Appellant's Br. at 15. Appellee on the other hand contends that the district court did not abuse its discretion in relying upon the "personal expenses" subcategory because this index is "the more accurate and relevant measure of ... what $75 worth of legal services in 1981 would cost today." Appellee's Br. at 9. We believe it is clear from the formulation of the exception to the statutory ceiling in section 2412(d)(2)(A), especially given the structural infirmities that would result from the alternative interpretation, that Congress intended by this exception to provide only for general cost-of-living adjustments to the $75 per hour maximum attorney fee award, not to authorize market rate awards.

■ Attorney fee awards are capped at $75 per hour under the terms of section 2412(d)(2)(A), "unless the court determines that an increase in the *cost of living ...* justifies a higher fee." Congress neither defined "cost of living" nor specified an index or other data to be used in calculating increases in the cost of living. "Cost of living," however, is a term with a commonly understood meaning. As commonly understood, the term means the costs of food,

---

**5.** The courts that have considered this issue have split over whether EAJA requires the use of a broad cost-of-living index or permits the use of an index that more specifically measures the cost of legal services. *Compare Uskokovic v. Sullivan,* 772 F.Supp. 387, 392–93 (N.D.Ill.1991) (requiring the use of a broad index); *Ofray v. Sullivan,* 741 F.Supp. 53, 54–55 (W.D.N.Y.1990) (same); *Harris v. Secretary, Dep't of Health & Human Servs.,* No. 87–0540–R, 1991 WL 331623 (E.D.Va. Feb. 12, 1991) (same), *appeal dismissed,* 91–2048 (4th Cir. Nov. 18, 1991); *Wells v. Sullivan,* No. 83–CV–497, Unempl. Ins. Rep. (CCH) ¶ 16,036A, 1990 WL 124067, 1990

U.S.Dist. LEXIS 11158 (N.D.N.Y. Aug. 24, 1990) (same); *Shaw v. Sullivan,* Civ. No. N–84–648 (PCD) (D.Conn. Mar. 6, 1990) (same); *and Torres v. Sullivan,* Civ. No. B–86–431, 1990 WL 265953 (D.Conn. Jan. 19, 1990) (same) *with Harris v. Sullivan,* 773 F.Supp. 612 (S.D.N.Y.1991) (choosing a narrow measure of market rates for legal services over CPI–U), *appeal dismissed,* No. 91–6273 (2d Cir. Dec. 10, 1991); *DeWalt v. Sullivan,* 756 F.Supp. 195, 198–201 (D.N.J.1991) (same), *appeal argued,* No. 91–5199 (3d Cir. Sept. 19, 1991); *Williams v. Sullivan,* No. 89–3285, 1991 WL 329581 (D.N.J. Feb. 4, 1991) (same); *and Malick v. Heckler,* No. 85–4946,

shelter, clothing, and other basic goods and services needed in everyday life.[6] It is highly unlikely that Congress would have chosen this commonly used term, which is widely understood to be a composite of almost exclusively nonlegal costs, *see* note 1 *supra,* had it intended to authorize adjustments to reflect increases in legal services costs in particular; if this had been its intent, it would have simply stated that the $75 cap applies "unless the court determines that an increase in the *cost of legal services* ... justifies a higher fee." Additionally, if Congress had intended for the term to have a specialized meaning, it almost certainly would have specially defined the term. *See Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

The structure of section 2412(d)(2)(A) confirms that Congress intended for the term "cost of living" to assume its ordinary meaning. If an adjustment for increases in the cost of legal services were allowed, the exception for legal services to the general rule that fee awards should reflect "prevailing market rates" would be meaningless; attorney fees, like all other fees, would be awarded at the prevailing market rates. As the Supreme Court observed in *Pierce v. Underwood,*

> Congress [did not mean] ... that if the rates for all lawyers in the relevant city—or even in the entire country—come to exceed $75 per hour (adjusted for inflation), then that market-minimum rate will govern instead of the statutory cap. To the contrary, ... Congress thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be.

487 U.S. at 572, 108 S.Ct. at 2553–54; *see also Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988) ("By permitting cost-of-living increases, Congress intended to provide attorneys at most with an hourly rate in present-day dollars commensurate with seventy-five dollars in 1981, but no more.").[7] Moreover, to allow adjustments for increases in the actual cost of legal services would defeat the intent of Congress to distinguish between attorney fee awards under section 2412(d), which are capped at $75 per hour, and awards under section 2412(b), which are made at prevailing market rates.[8]

1989 WL 831, 1989 U.S.Dist. LEXIS 68 (E.D.Pa. Jan. 9, 1989) (same).

**6.** The "[c]ost of living is usually measured by the Consumer Price Index." Black's Law Dictionary 346 (6th ed. 1990); *see also id.* at 317 (describing the CPI as "[w]idely used to measure changes in cost of maintaining given standard of living"). Strictly speaking, however, CPI–U is not a perfect measure of the cost of living because its "fixed market basket" does not "reflect substitution among items in response to relative price change" or "include such factors as income taxes and changes in preferences." United States Department of Labor, Bureau of Labor Statistics, Using the Consumer Price Index for Escalation 1 (Jan.1989) (Report 761); *see also* Appellant's Br. at 10 & n. 10. Nevertheless, federal statutes explicitly use CPI–U to adjust civil service pay, military retirement benefits, and income tax brackets. *See* 5 U.S.C. § 8331(15); 10 U.S.C. § 1401a; I.R.C. § 1(f).

**7.** The *Baker* court stated at one point that "[rates] increased only to the extent necessary to insure an adequate source of reparation ... should never exceed *the percentage by which the market rate for attorneys' fees have increased."* *Baker,* 839 F.2d at 1084 (emphasis added). Ap-

pellee seizes upon this passage to contend that *Baker* permits attorney fee awards at the prevailing market rate. *See* Appellee's Br. at 13, 22; *see also Harris,* 773 F.Supp. at 615 (interpreting *Baker* similarly); *DeWalt,* 756 F.Supp. at 200–01. This passage, however, means only that if inflation has risen at a greater percentage rate than the cost of legal services, an award above the statutory cap must be limited to the percentage increase in the cost of legal services. It does not mean (or even suggest) that awards generally should be based upon market rates.

**8.** Section 2412(b) authorizes an award of "reasonable" attorney fees against the United States where, and to the extent that, a private party in the government's position "would be liable under the common law." *Id.* § 2412(b). Where the United States has litigated in bad faith, for example, it is subject to a common law attorney fee award based upon prevailing market rates. *See, e.g., Baker,* 839 F.2d at 1080 & n. 3, 1081–82; *Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 217 & n. 26 (D.C.Cir. 1984); *see also* H.R.Rep. 1418, 96th Cong.2d Sess. 8 (1980) ("The 'bad faith' exception allows an award where the losing party has willfully disobeyed a court order or has acted in bad faith, vexatiously, wantonly, or for oppressive

The courts that have permitted awards based upon the market rate for legal services have done so not on the basis of the statutory language or structure, but rather on the asserted rationale that market-rate awards were required to fulfill the congressional purpose of ensuring that prospective plaintiffs do not have a financial disincentive to pursue their claims against the government. *See, e.g., Harris,* 773 F.Supp. at 615–16; *DeWalt,* 756 F.Supp. at 200. The elimination of financial disincentive was, indeed, one of the chief reasons Congress provided for attorney fee awards. Congress, however, determined that this purpose is fulfilled by the $75 per hour rate, adjusted for inflation. It specifically considered and rejected proposals during both the enactment and the reenactment of EAJA that would have eliminated the cap and allowed attorney fee awards to be made on the basis of prevailing market rates. *See Equal Access to Justice Act of 1979: Hearings Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary,* 96th Cong., 1st Sess. 88 (1979); *Equal Access to Justice Act: Hearing Before the Subcommittee on Agency Administration of the Senate Committee on the Judiciary,* 97th Cong., 2d Sess. 207–08 (1982).

▮ Accordingly, we hold that section 2412(d)(2)(A) does not permit an attorney fee award above the $75 statutory ceiling based upon increases in the market rate for legal services. Limiting awards to the $75 statutory ceiling, adjusted only for general cost-of-living increases in accordance with the statutory text, effectuates Congress' intent that attorney fees be fixed at $75 per hour in 1981 dollars regardless of the prevailing market rates, yet ensures that the maximum rate will continue to provide adequate compensation notwithstanding inflation.

The error of the court below and the other courts that have awarded EAJA attorney fees based upon data that specifically measure increases in the cost of legal services is in their premise that Congress reasons."), *reprinted in* 1980 U.S.Code Cong. & intended for attorney fee awards above the $75 per hour statutory maximum to be based on prevailing market rates. *See, e.g., DeWalt,* 756 F.Supp. at 201 ("Beans, corn and hamburger may have appreciated less than an hour of a lawyer's time, but plaintiffs must shop in the legal market, not the supermarket."). This was never Congress' intent. Congress "thought that $75 an hour was generally quite enough public reimbursement for lawyers' fees." *Underwood,* 487 U.S. at 572, 108 S.Ct. at 2554.

## CONCLUSION

The district court's award of attorney fees based on the "personal expenses" subcategory is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

**VACATED AND REMANDED.**

Admin.News 4953, 4984, 4987.