**Predrag USKOKOVIC, Plaintiff,**

v.

**Louis SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

No. 88 C 2699.

United States District Court, N.D. Illinois, E.D.

July 16, 1991.

Frederick J. Daley, Ltd., Chicago, Ill., for plaintiff.

Fred Foreman, U.S. Atty. by Carol A. Davilo, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This social security disability benefits appeal is before the court on the motion of plaintiff, Predrag Uskokovic, for $9,587.74 in attorneys' fees and $1000 in costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the reasons set forth below, the court grants

Uskokovic's motion for fees but adjusts the sums requested.

## BACKGROUND

On March 20, 1986, Uskokovic applied for disability benefits with the Secretary of Health and Human Services, alleging disability dating from February 1985, due to a back injury. In a decision dated June 30, 1987, after an administrative hearing on the application, an Administrative Law Judge ("ALJ") found that Uskokovic had been disabled since December 18, 1986, due to an affective disorder from a back injury and a psychological overlay to those physical problems. The Appeals Council denied Uskokovic's request for review of the decision by letter dated January 25, 1988.

Uskokovic sought judicial review of the decision, claiming that his disability began in February 1985, not in December 1986. The court remanded the case for further administrative proceedings, and on December 28, 1990, a different ALJ issued a decision finding that Uskokovic had, in fact, been disabled since February 1985, as he had argued all along. Accordingly, Uskokovic was awarded back benefits covering the period from March 1985 through December 1986.

## ANALYSIS

*Substantially Justified.*

The Secretary opposes the present motion for attorneys' fees, because he claims that his position in opposing the earlier disability onset date was "substantially justified." Section 2412(d)(1)(A) provides in relevant part:

[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States ... *unless the court finds that the position of the United States was substan-*

*tially justified or that special circumstances make an award unjust.*

(emphasis added). The Supreme Court has explained that the term "substantially justified" does not mean " 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). This definition comports with the Seventh Circuit's interpretation of the phrase. *Id. citing Ramos v. Haig,* 716 F.2d 471, 473 (7th Cir.1983) ("substantially justified" means reasonable basis both in law and in fact).

In the administrative decision of December 28, 1990, which adopted the position of Uskokovic, the ALJ found that the claimant suffers from severe discogenic disease of the lumbar spine and severe depression. The ALJ found that while the physical problems might not ordinarily cause the disabling pain claimed by Uskokovic, the psychological component enhanced the pain. The ALJ concluded that Uskokovic is clearly disabled. In addition, he determined the onset date of the disability to be March 1, 1985, "based largely on the testimony of Dr. Reich." Dr. Reich's testimony was not part of the record before the first ALJ to consider the case, and the psychological assessments of Uskokovic that were considered in conjunction with the June 30, 1987 decision did not suggest the point at which he became disabled. Therefore, this court must decide whether the Secretary's position that December 18, 1986 constituted the disability onset date was "justified to a degree that would satisfy a reasonable person." *Pierce* at 2550.

In *Lichter v. Bowen,* 814 F.2d 430 (7th Cir.1987), the Seventh Circuit analyzed Social Security Ruling 83–20, which describes how the Social Security Administration should determine the onset date of a disability. The court explained:

[SSR 83–20] states that the onset date for disabilities of traumatic origin is the date of the injury. In disabilities of nontraumatic origin three factors are to be considered in determining the onset date:

the applicant's allegations, work history, and medical and other evidence. SSR 83–20 describes the date alleged by the applicant as "[t]he starting point" in determining the onset date; that date "should be used if it is consistent with all the evidence available." Regarding work history, SSR 83–20 states that "[t]he day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." Medical evidence is described as "the primary element in the onset determination," and the date chosen "can never be inconsistent with the medical evidence of record." In cases where there is no medical evidence as to the precise onset date, but where the disabling impairment seems to have occurred prior to the date of the first recorded medical examination, the ALJ "should call on the services of a medical advisor" to help in making the necessary inferences. Where no reasonable inference is possible based on the available evidence, "it may be necessary to explore other sources of documentation."

*Id.* at 434–435 (citations omitted).

The plaintiff argues that the June 30, 1987 determination that the disability onset date was December 18, 1986, was clearly unreasonable, because no medical evidence supports that finding. Uskokovic was injured on February 12, 1985, and he has been unable to work since that time. The first ALJ found that the "objective" medical evidence relating to his back injury had remained relatively unchanged since the injury, but that the psychological component had become disabling over time. The ALJ concluded that the evidence failed to show that Uskokovic's symptoms were anything but physical until shortly before the hearing on January 13, 1987. Two psychologists, who examined him in February and April of 1987, assessed the claimant's condition as an affective disorder resulting from his lower back pain. The reports of these psychologists coupled with the assessment of Uskokovic's examining physician, who reported on December 18, 1986 that the claimant was "progressively getting worse," led the ALJ to conclude that

the psychological illness, which rendered the physical pain disabling, had only recently set in.

The evidence does not support this conclusion. While on December 18, 1986, the claimant's examining physician, Dr. Vucicevic, noted increasing pain and a decrease in Uskokovic's range of motion, the cycle of slight improvement followed by marked deterioration in his condition can be dated to early in 1985. The decision to isolate the one report from December 1986 was unreasonable. Dr. Vucicevic reported a worsening of the claimant's condition as early as March 18, 1985; in addition, in numerous reports between July 30, 1985 and December 18, 1986, the doctor noted either a worsening of Uskokovic's condition or a significant lack of improvement. While no psychological analyses were undertaken until early 1987, it is unreasonable to conclude that the disabling psychological aspects of the claimant's condition were only manifested at that time. Neither psychologist suggested that his psychological condition was of recent origin, and, in fact, both noted its relation to his earlier back injury.

Dr. Marjorie S. Ardon, who conducted a psychological examination of Uskokovic at the state's request, specifically noted in her report of April 14, 1987, that for the past seven months, due to a combination of depression and sleeplessness, the claimant had experienced difficulty getting up in the morning. Aside from this one reference, her report contained no indication of what she believed to be his disability onset date. Dr. Ardon merely related his symptoms and concluded that, at the time of his examination, Uskokovic was disabled. If the ALJ were to divine an onset date from Dr. Ardon's report, which this court believes did not purport to make such a determination, December would not have been appropriate. By September (seven months prior to the examination), the symptoms of severe depression were already manifested.

On February 11, 1987, Uskokovic submitted to a mental status examination with Dr. George M. Gentry. Based on his examination of Uskokovic, Dr. Gentry reported a severe affective disorder. The doctor did

not purport to determine an onset date, but rather spoke exclusively of the symptoms as they appeared at that point. As Dr. Ardon had done, Dr. Gentry did no more than to assess the present state of the claimant's mental health in an effort to aid the disability determination.

Neither the psychological examinations, nor the ongoing reports of Dr. Vucicevic, suggest a disability onset date of December 18, 1986. Even the reports of Dr. Vucicevic had explicitly declared the claimant to be disabled by September 18, 1986. While this analysis does not establish that February 12, 1985 was the only reasonable onset date the ALJ could have chosen, an award of fees and costs does not depend on such a finding. Instead, this court may award attorneys' fees and costs unless the Secretary's position was "substantially justified." The court finds that the decision of June 30, 1987 was not "substantially justified." Accordingly because Uskokovic was the prevailing party within the meaning of the Equal Access to Justice Act, he is entitled to attorneys' fees and costs pursuant to 28 U.S.C. § 2412(d)(1)(A).

*Reasonable Fees and Costs.*

The Secretary contends that even if his position was not substantially justified, the fee petition submitted by Uskokovic's attorney is unreasonable and should therefore not be awarded in full.

The claimant requests reimbursement for $930 of expenses incurred, as follows:

(1) $50 for the report of vocational expert Dr. George Gentry;

(2) $520 for the clinical interview and report of Psychologist Dr. William Reich; and

(3) $360 for the testimony of Dr. Reich at the remand hearing.

He seeks reimbursement for costs of $120. In addition, he seeks attorneys' fees in the amount of $5,082.98 for work before this court and $4,504.76 for work before the Secretary on remand. The Secretary has not challenged the application for costs and expenses, which total $1,050.[1] The Secretary opposes the application for fees, however, on several grounds.

Section 2412(d)(1)(A) grants the district court the authority to award "reasonable fees and expenses of attorneys." Section 2412(d)(2)(A) establishes that attorneys' fees "shall be based upon prevailing market rates for the kind and quality of the services furnished" except that such fees "shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court stated that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 1939. Thus, hours not reasonably expended—those that are "excessive, redundant or otherwise unnecessary"—should be excluded. *Id.* at 1939–40. In addition, the court should consider such factors as the results obtained. *Id.* at 1940.

The Secretary notes that Uskokovic had already obtained a favorable result in his administrative hearing and the work of his attorney merely gained him an additional twenty-one months of disability benefits, worth $13,350. It is the Secretary's position that a bill for more than $10,500 in attorney's fees is unreasonable in an action in which the client's award is $13,350.

This court rejects that argument. The EAJA was passed to prevent a potential claimant from falling prey to exactly that logic. The Senate Report explained:

For many citizens, the cost of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process.... When the cost of contesting a Government order, for example, exceeds the

---

1. In his motion for attorneys' fees, Uskokovic requested reimbursement of costs and expenses in the amount of $1000. This court believes that Uskokovic intended to request reimbursement in the amount of $1,050 and accordingly awards him that amount.

amount at stake, a party has no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it.

*Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 2253, 104 L.Ed.2d 941 (1989), *citing* S.Rep. No. 96–253, p. 5 (1979); *see also Commissioner, INS v. Jean,* —— U.S. ——, 110 S.Ct. 2316, 2322, 110 L.Ed.2d 134 (1990). The issue with which this court must concern itself is whether the fee petition is reasonable in light of the rates requested and the work performed. The Secretary claims it is not.

Specifically, the Secretary challenges the billing rates assessed for the services of each of the attorneys involved in the case. Two attorneys worked on the claimant's case and have requested reimbursement at the rate of $137.55 per hour. A third-year law student also assisted in the preparation of Uskokovic's case and has been billed out at $75 per hour.

The Secretary acknowledges that under the EAJA an attorney may be awarded more per hour than the $75 maximum incorporated in the EAJA, because the statute allows for fee adjustments to reflect an increase in the cost-of-living. The parties dispute, however, how to determine the appropriate cost-of-living adjustment. The Secretary argues that the "All Items" index contained in the U.S. Department of Labor's Consumer Price Index for Urban Consumers provides an appropriate basis for determining such an adjustment. Uskokovic argues, on the other hand, that this court should apply the "Other Services" and "Legal Services" [2] CPI in determining the fee award.

■■■ The Secretary has precedent on his side. In those cases in which the courts identified the CPI sub-index used, most based any cost-of-living adjustments awarded on the "All Items" index. *See, e.g., Animal Lovers Volunteer Ass'n v. Carlucci,* 867 F.2d 1224, 1227 (9th Cir. 1989); *Allen v. Bowen,* 821 F.2d 963 (3d Cir.1987); *Ofray v. Secretary of HHS,* 741

F.Supp. 53 (W.D.N.Y.1990); *Petition of Duggan,* 734 F.Supp. 705 (D.S.C.1990); *Dabone v. Thornburgh,* 734 F.Supp. 195 (E.D.Pa.1990); *U.S. v. Willens,* 731 F.Supp. 1579 (S.D.Fla.1990). In only one of these cases, however, was the particular index to be applied at issue. *See, Ofray.*

Neither the statute nor the legislative history indicates that Congress intended courts to apply a specific category of the CPI. Moreover, there is no controlling authority mandating the adoption of one category over the other. Few courts have faced the issue of which category to apply, and of those that have, few have fully explained the rationale for applying one index over the other. *See, e.g., Torres v. Sullivan,* Civ. No. B–86–431, 1990 WL 265953 (D.Conn. March 6, 1990) (Magistrate's Report and Recommendation, affirmed by district court, found no reason to deviate from practice of using "All Items" index); *Wells v. Sullivan,* 1990 WL 124067, 1990 U.S.Dist.Lexis 11158 (N.D.N.Y. August 24, 1990) (without explanation, court finds "All Items" index to be the correct measure of inflation); *Malick v. Heckler,* 1989 WL 831, 1989 U.S.Dist.Lexis 68 (E.D.Pa. Jan. 9, 1989) (without explanation, court found services category "more accurate" than the "All Items" index).

In *Ofray,* one of two reported decisions on this point that has come to this court's attention, the court considered the plaintiff's argument that the "Personal and Educational Services" index was a more appropriate basis for adjusting attorneys' fees than the "All Items" index. In rejecting the plaintiff's contention, the court reasoned that the use of the "All Items" index had been the customary practice in the past, and that if Congress had intended courts to apply a different category it would have incorporated that mandate when the statute was renewed in 1985. Moreover, the court noted that the House Report stated its intention that the $75 cap be exceeded in special circumstances "such as 'an increase in the cost of living.'" *Of-*

---

**2.** The "Legal Services" category was part of "Other Services" until December 1986, but since then it has been a separate category.

*ray* at 54, *citing* H.R.Rep. No. 1418, 96th Cong., 2d Sess., *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984, 4994. The term "cost of living," the court reasoned, was a broad term suggesting that reference should not be made to a specialized category of the CPI, but rather to the "All Items" index, which reflects increases in the overall cost of living.

In *De Walt v. Sullivan*, 756 F.Supp. 195 (D.N.J.1991), the court considered *Ofray* but found its logic unpersuasive. The court reviewed the legislative history of the EAJA, and determined that the index tied to legal services would better serve the aims of the statute than the one tied to "across-the-board inflation." *Id.* at 200. The court concluded that a higher fee rate, under the "Legal Services" index, would clearly protect the interests of litigants by ensuring adequate representation. By using the "Legal Services" index, the court "protects a plaintiff's ability to obtain legal representation on par with the legal representation that could have been obtained in 1981 for $75 per hour." *Id.* at 201.

The court found that the "Legal Services" category might not as adequately serve the second goal of the EAJA, to protect the public fisc. Given the fact that the specialized index better ensured the adequacy of legal representation, however, the court found it to be the appropriate measure. The court rejected "the government's position that 'All Items' is the appropriate category for measuring 'an increase in the cost of living,' when the 'cost' involved is a particular cost, that being the cost of obtaining legal representation." *Id.*

This court finds the reasoning of the *Ofray* court to be more persuasive than that of *De Walt*. The EAJA allows for an adjustment to the $75 cap, if it is justified by "an increase in the cost of living," not an increase in attorney billing rates. It is highly unlikely that Congress intended the statutory ceiling to be determined by the fee demands of attorneys. Applying the

logic of *Ofray* serves both to fulfill the goals of the EAJA and to adhere to the language of the statute. Accordingly, the court will look to the "All Items" index to determine the appropriate fee award.

The Secretary next challenges Uskokovic's requested rate of $137.55 per hour for the legal work of his attorneys. The Secretary argues that this rate, arrived at by adjusting $75 to present day terms under the "Other Services" and "Legal Services" indices, would provide the attorneys with the maximum rate allowed under the EAJA. Because this court has decided that the "All Items" index is the appropriate reference for adjusting the $75 cap, the maximum rate would be $107.25.[3] Uskokovic must prove that his attorneys are entitled to this figure.

In *Tomczak v. Chicago*, 586 F.Supp. 959 (N.D.Ill.1984), *cert. denied* 474 U.S. 946, 106 S.Ct. 313, 88 L.Ed.2d 289 (1985), a Shakman case, the court noted that the February, 1984 National Law Journal determined that while the average billing rate for partners in Chicago was $127 per hour, partners in some firms were billing up to $250 per hour. Uskokovic compares these figures to the November, 1989 National Law Journal, which reported that non-contingent billing rates for partners in Chicago law firms range from $135 to $350 per hour. He also notes that his attorney has been awarded fees in Social Security cases in this district at rates of $175 per hour, *see Vance v. Sullivan*, 85 C 6729 (N.D.Ill. 1990), and $188 per hour, *see Kuwahara v. Sullivan*, 84 C 7352 (N.D.Ill.1989). In fact, he notes that this court awarded his attorney $175 per hour in *Ratcliff v. Sullivan*, 85 C 4687 (N.D.Ill.1989).

Frederick J. Daley, the counsel of record, in this case, is an experienced practitioner in the field of Social Security claims. He is a member of the Chicago Bar Association's Social Security disability law panel and is listed on the CBA lawyer referral panel. In addition, he is a member of the National

---

**3.** As of October 1981, when the EAJA was enacted, the CPI "All Items" index was 279.9. In December 1990, the "All Items" index was 400.9. This represents a 43% increase in the rate since 1981. Adjusting the 1981 hourly rate of $75 by 43% (or $32.25) brings the 1990 hourly rate to $107.25.

Organization of Social Security Claimant's Representatives and has addressed national and local organizations on the topic of Social Security claims. This court finds that Uskokovic has made a sufficient showing that the maximum billing rate, or $107.25 per hour for work performed by Mr. Daley is not unreasonable.

Dorie Budlow, who works in private practice at Frederick J. Daley, Ltd., also participated in this case. Since entering private practice in 1986, her work has focused on Social Security disability claims. Like Mr. Daley, Ms. Budlow has demonstrated that she is an experienced practitioner in the field. Accordingly, the court finds that the maximum rate, $107.25, is a reasonable billing rate for Ms. Budlow's services.

■ In addition to the work performed by the two practicing attorneys, some of the research and writing was done by a third year law student, Ruta Stropus. Uskokovic requests that her work be reimbursed at a billing rate of $75 per hour. This court recognizes the benefits of employing the services of law students, particularly the cost savings inherent in the practice. *See Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229 (1989). During the two and a half years she spent working as a law clerk for Frederick J. Daley, Ltd., Ms. Stropus had extensive exposure to Social Security disability claims and was involved in drafting numerous briefs. In light of that experience, this court finds a fee of $70 per hour to be reasonable.

■ The Secretary's final opposition to the claimant's fee request focuses on the total number of hours requested. Uskokovic concedes that the time log reflecting the hours spent on his case totals thirty-seven, not the thirty-nine hours requested; he attributes the difference to an arithmetical error, and requests the court to reduce the award accordingly. The Secretary suggests, however, that certain billing entries, for example those totalling three-quarters of an hour, for requests for extensions between October 1989 and January 1990 are unreasonable. Uskokovic responds that the Appeals Council requires such requests to be in writing, and that these requests were necessary to keep the record open for the psychological report from Dr. Reich. This court does not find that billing for this time is unreasonable, particularly given the need for a psychologist's analysis of the history of Uskokovic's mental disorder.[4] This court also rejects the Secretary's contention that certain billing entries for telephone calls to Uskokovic are unreasonable. In the months leading up to the administrative hearing, it is understandable that an attorney and his client would be in constant contact with one another, and this court has no reason to question the attorney's judgment regarding the economic efficiency of telephone conversations rather than a conference. Having reviewed the time log submitted by Uskokovic's attorney, this court finds that the administrative time logs reflecting seventy hours of attorney time are not unreasonable.[5]

■ Finally, attached to Uskokovic's reply to the secretary's opposition to his fee petition is another time log, seeking reimbursement for fifteen hours of law clerk time and one and a half hours of attorney time for the preparation of the reply brief. In *Commissioner, INS v. Jean*, —— U.S. ——, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), the Supreme Court held that a claimant under the EAJA need not make a separate showing that the Secretary was not substantially justified in opposing the fee petition. Therefore, the court will review this time log according to the same standards

---

4. The Secretary also notes that the time logs reveal that claimant's attorney transmitted at least one of Dr. Reich's bills to Uskokovic. Uskokovic must be compensated the requisite amount from the award granted to his attorney.

5. In addition to the arithmetical error in the first administrative time log attached to the fee petition, which was noted by the Secretary, there is an error in the second time log. In the second time log, which contains entries from April 6, 1989 through December 31, 1989, the total should read thirty-three hours. Thus the total number of attorney hours for which Uskokovic seeks reimbursement is seventy.

of reasonableness granted the other billing requests.

The law clerk who was responsible for drafting the reply brief, Carla Dobrovits, had worked for Frederick J. Daley, Ltd. for slightly more than two years at the time of her involvement in this case. She has had significant exposure to Social Security cases during that period. Uskokovic has requested reimbursement at the rate of $50 per hour of Ms. Dobrovits' time. The court finds that request reasonable. Moreover, the court finds the fifteen hours Ms. Dobrovits spent on the issues involved, plus the one and a half hours of attorney time spent reviewing her work to be reasonable.

## CONCLUSION

As set forth in the foregoing analysis, this court finds that Uskokovic is the prevailing party in this action and that the Secretary was not substantially justified in his opposition to Uskokovic's disability claim. Furthermore, the court finds that the following billing rates for the following hours logged by each attorney are not unreasonable:

(1) Frederick J. Daley: 55.25 hours at $107.25
(2) Dorie Budlow: 11.75 hours at $107.25
(3) Ruta K. Stropus: 4.5 hours at $70.00
(4) Carla T. Dobrovits: 15 hours at $50.00

Accordingly, the Secretary shall pay directly to Uskokovic's attorney attorneys' fees in the amount of $8250.75. The Secretary shall also pay to Uskokovic's attorney costs in the amount of $1050.00, for a total award of $9300.75. Counsel is ordered to reimburse Uskokovic for any fees or costs already transmitted to him.