**Barbara J. STEVENSON,
Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner
of Social Security, Defendant–
Appellee.**

Nos. 95–3049, 95–3469.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1996.

Decided Jan. 21, 1997.

Susan O'Neal Johnson (argued), Kavanagh, Scully, Sudow, White & Frederick, Peoria, IL, for Plaintiff–Appellant.

Suzanne E. Duman (argued), Marc Mates, Department of Health and Human Services, Region V, Office of General Counsel, Chicago, IL, K. Tate Chambers, Office of U.S. Attorney, Peoria, IL, Peter S. Krynski, Office of General Counsel, Falls Church, VA, for Defendant–Appellee.

Before RIPPLE, MANION, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Barbara Stevenson filed a claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d). After an evidentiary hearing, an administrative law judge concluded that Stevenson did not qualify as disabled as of 1975, when her status as an insured individual expired. The Appeals Council declined review, rendering the ALJ's decision the final decision of the Commissioner of Social Security. 20 C.F.R. § 404.981. Stevenson filed suit in the district court pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g), and on cross-motions for summary judgment, the district court affirmed the Commissioner's decision. We likewise affirm the district court's decision.

## I.

In 1987, Stevenson was found to be suffering from multiple sclerosis. In the years following that diagnosis, she reported (among other difficulties) a lack of coordination, numbness, frequent headaches, difficulty walking, and a tendency to fall. In 1992, Stevenson told her physician that she was able to do little or no housekeeping, that she could not carry groceries into the house, and that she avoided stairs and lived solely on the first floor of her home for fear of falling. The following year she reported increasing weakness in her legs, severe headaches, and extreme fatigue, to the point where she slept nearly the entire day. Whether her multiple sclerosis was the sole cause of this deterioration is unclear. In the years preceding her diagnosis, Stevenson had experienced recurrent blackouts and other symptoms that her doctors attributed largely to anxiety. Subsequently, physicians continued to suspect that

stress and anxiety had contributed to her condition. Even so, in 1994, her doctor wrote that Stevenson "has gone downhill over a number of years and currently has significant functional impairments due to the multiple sclerosis." Friends described a once vibrant, active woman transformed into a withdrawn, forgetful person who could barely walk with a cane and who had difficulty performing the most rudimentary tasks.

Yet, however clear Stevenson's present incapacitation may appear to be, it is her ability to work in 1975 which is dispositive for purposes of her disability claim. Stevenson had worked as a long-distance telephone operator from 1958 until 1969, when she gave birth to her daughter and began caring for her ailing father. After that, she worked outside of the home only sporadically, and her status as an insured for purposes of disability benefits expired on September 30, 1975. So to succeed on her claim, Stevenson must show that as of that date, she qualified as disabled.

Unfortunately, the evidence provides an incomplete picture of Stevenson's abilities in 1975. We know that prior to that time, she was hospitalized several times, twice following traumatic injuries (on one occasion, she had fallen down a flight of stairs, and on another she was thrown from a horse) and in other instances for pain-related complaints. She had surgery on her neck in 1967 to address chronic neck and arm pain and back surgery in 1974 for pain in her lower extremities. Throughout this period, her physicians believed that there was an emotional component to her complaints. Lending apparent confirmation to that belief are notes in Stevenson's hospital records that she appeared to be nervous and agitated to her physicians, that she had suffered bouts of depression and "nervous breakdowns," and that she was taking medication prescribed for anxiety disorders.

The record post-dating Stevenson's insured status reflects complaints of headaches and back pain, recurrent blackouts, and prescribed use of a variety of anti-depressants. Stevenson's physicians continued to attribute many of her complaints to stress and anxiety, and she did consult with a psychologist dur-

ing this period. In 1986, before her multiple sclerosis was confirmed, one treating physician noted that "[Stevenson] may have a subclinical form of multiple sclerosis, but I think most of her symptoms are on the basis of tension and pressure."

In addition to what the medical record tells us, we know something about Stevenson's life activities, although again the record is not complete and points in different directions as to the extent of her limitations. Stevenson described a decline in physical coordination beginning in her adolescence that increasingly limited her activities. During the 1960s, for example, she no longer did the grocery shopping; by the end of the following decade, she could no longer do any housework. She found during the 1970s that she could sit for about thirty-five to forty minutes and then she would have to get up. She could remain on her feet for about an hour at a time and possibly could lift up to twenty pounds. She had headaches almost daily, pain in her back and legs, and her attention span was diminished. Fatigue forced her to nap for several hours every afternoon. Her appetite was dull. And yet, despite these limitations, Stevenson was able to participate in a number of activities. She attended college part-time in the 1970s and 1980s and ultimately earned an associate's degree in the 1980s. She was active in the PTA and in an organization for Christian businesswomen. She started a society for persons recently diagnosed with MS. She helped coach the basketball and volleyball teams at her daughter's school (although she mostly gave the team directions while seated). She took annual fishing trips with her husband (although she was increasingly unable to do much fishing herself). She traveled to Europe twice (although a friend who traveled with her described her as frail, increasingly immobile, and on occasion confined to her hotel room by fatigue and difficulty in functioning generally).

Faced with this evidence, the ALJ concluded that Stevenson did not qualify for disability benefits for two separate reasons. First, he found that Stevenson had, during the final quarter of 1976, engaged in work (apparently as a salesperson) that constituted substantial gainful employment for purposes of the gov-

erning regulations. Consequently, she could not be deemed disabled as of the expiration of her insured status in 1975. Alternatively, the court found that despite her apparent impairments (a degenerative disease of the lumbar and cervical spine as well as an anxiety disorder) and her consequent inability to perform her past work, Stevenson retained the ability upon the expiration of her insured status to perform sedentary work, within certain limits. In making that determination, the ALJ found that "[t]he claimant's statements regarding her subjective symptoms and functional limitations as of September 30, 1975, are inconsistent with her daily activities and not fully supported by the medical evidence, and are not fully credible." R. 29.

The district court undertook a thorough review of the ALJ's order in light of Stevenson's objections. It addressed each of the ALJ's alternative reasons for determining that Stevenson was not disabled, and concluded that his findings were supported by substantial evidence in all pertinent respects. It therefore granted the Commissioner's motion for summary judgment.

## II.

Like the district court, we review the Commissioner's final decision denying Stevenson disability benefits—here, the ALJ's order. *E.g., Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir.1994). As in any case, we look to see whether the ALJ made any legal errors (*e.g., Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993)), but we have found none here. Thus, our task is to determine whether the ALJ's factual determinations are supported by substantial evidence. 42 U.S.C. § 405(g); *see, e.g., Books v. Chater*, 91 F.3d 972, 977 (7th Cir.1996). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938), quoted in *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Books*, 91 F.3d at 977–78; *Anderson v. Sullivan*, 925 F.2d 220, 222 (7th Cir.1991).

As we have noted, Stevenson's status as an insured expired on September 30, 1975, so in order to recover benefits, she must establish that she was disabled as of that date. *Meredith v. Bowen,* 833 F.2d 650, 655 (7th Cir.1987); *see also Callaghan v. Shalala,* 992 F.2d 692, 695 (7th Cir.1993). Stevenson maintains that she became disabled and thus was unable to work as of January 1, 1970. Yet, as we shall see, her continued employment after that date, and indeed after she no longer was insured, supports the ALJ's determination that she was not disabled.

The statute defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Commissioner follows a familiar five-step process in determining whether the claimant's limitations meet this definition, inquiring: (1) whether the claimant is working and whether that work constitutes substantial gainful activity; (2) whether the claimant has a severe impairment, one that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant's impairment meets or exceeds any of the particular impairments listed at 20 C.F.R. Pt. 404, Subpart P, Appendix 1, which the Commissioner regards as conclusively disabling; (4) whether the claimant's impairment prevents her from performing her past relevant work; and (5) whether her impairment prevents her from doing other types of work. 20 C.F.R. § 416.920; *see Wolfe,* 997 F.2d at 323.

Our focus here is upon the first of these inquiries. The ALJ determined that Stevenson was not disabled as of the date her insured status expired in view of the fact that she engaged in substantial gainful activity after that date, and thus had not lost her ability to work. R. 24. Having reviewed the record, we conclude that the ALJ's finding is supported by substantial evidence. Because a finding adverse to the claimant at this step bars her claim for benefits (*see Wolfe,* 997 F.2d at 323, quoting *Young v. Secretary of Health and Human Servs.,* 957 F.2d 386, 389 (7th Cir.1992)), we need not consider the other four steps in the five-step inquiry. We therefore do not reach the ALJ's alternative determination that Stevenson did not qualify as disabled as of September 30, 1975 because despite her impairments, she retained the ability to perform sedentary work. *See* R. 24–29.

The Commissioner's criteria for identifying substantial gainful activity are set out in 20 C.F.R. § 404.1572 *et seq.* As that provision indicates, "substantial gainful activity is work activity that is both substantial and gainful." § 404.1572; *see Callaghan,* 992 F.2d at 695.

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

§ 404.1572.

It is undisputed that Stevenson worked during the last quarter of 1976. Her earnings record reveals earnings of $1,419.75 in that quarter. The earnings guidelines set out in 20 C.F.R. 404.1574(b)(2) indicate that earnings averaging more than $230 per month in the calendar year 1976 "will ordinarily show" that the claimant has engaged in substantial gainful activity, and Stevenson's earnings during the final quarter of that year average out to approximately $473 per month, which well exceeds the regulatory benchmark. This was clearly gainful work in the sense that Stevenson profited from it (sec. 404.1572(b)), and nothing in the record suggests that it was not "substantial" in terms of its mental and physical demands (sec. 404.1572(a)). Stevenson herself concedes that this work qualifies as "substantial gainful activity" for purposes of the disability determination. (Stevenson Br. 27.)

Nonetheless, Stevenson contends that this work should be considered an "unsuccessful work attempt" that leaves her eligible for disability benefits. The regulations provide that work that the claimant "[is] forced to stop after a short time because of [her] impediment" will be deemed an unsuccessful work attempt and the earnings from such an attempt will not be considered as evidence that the claimant can engage in substantial gainful activity. 20 C.F.R. § 404.1574(a)(1). The relevant question thus is whether it was Stevenson's disability, or some other circumstance, that brought an end to her employment in 1976. *Id.;* Social Security Ruling 84–25, 1984 WL 49799 (S.S.A.). In her application for benefits, Stevenson noted that she had held a series of temporary jobs in the 1970s (none for more than three months), and she acknowledged specifically that she had "worked a little more in 1976[,] which explains the higher earnings for that year." R. 41. Yet, she maintained, "[a]ll of these work attempts were made in spite of [her] disabling condition" (R. 42), and she "always stopped working due to one disabling condition or another" (R. 41).

However, the ALJ determined that Stevenson's disability was not the reason that her 1976 employment came to an end. Stevenson testified that she thought she worked at a local mall in 1975 or 1976 (R. 444, 445), and the prehearing questionnaire that she completed indicated that she held two sales jobs at Northwoods Mall (date uncertain) which terminated due to lack of work (R. 405). The ALJ inferred that (1) these were jobs that accounted for her earnings in the last quarter of 1976; and (2) because the reason for termination was lack of work rather than inability to perform the job, these could not be considered unsuccessful work attempts. R. 24. Stevenson contends essentially that this rationale is speculative and unfounded, because there is no evidence that she in fact worked at the mall in the fourth quarter of 1976, because Stevenson herself was unable to pin down when exactly she held the mall jobs, and because the ALJ "completely ignored her prior statement [on the application for benefits] that she had quit every job since 1969 due to her impairments." Stevenson Br. 28.

Notwithstanding Stevenson's criticism, the ALJ's finding has the support of substantial evidence in the record. Although, as Stevenson points out, she was unable to provide a time frame in the pre-hearing questionnaire for her employment at the mall (R. 405), she did testify before the ALJ that she thought she was so employed either in 1975 or 1976 (R. 444, 445). Her earnings record reflects no income in 1975 (R. 54), and in her benefits application Stevenson affirmatively indicated that she did not work during that year (R. 41). Viewed cumulatively, then, the evidence suggests that her employment at the mall occurred in 1976. The ALJ was entitled to make reasonable inferences from the evidence before him (*see, e.g., Sample v. Shalala,* 999 F.2d 1138, 1143 (7th Cir.1993)), and this inference was eminently reasonable. Moreover, despite Stevenson's broad statement that her disability had forced her from every job she had held after 1969, having heard Stevenson testify and examined the other evidence before him, the ALJ was well within his discretion in crediting Stevenson's subsequent and specific statement that her sales positions at the mall had ended due to a lack of work. Nothing in the record indicates that this statement is incorrect or incredible.

In view of Stevenson's continued ability to engage in substantial gainful activity in 1976, the ALJ reasonably concluded that she was not disabled for purposes of the Social Security Act in September 1975, when she was last insured.

**III.**

The ALJ's determination that Stevenson was not disabled as of the date her insured status expired has the support of substantial evidence in the record. The district court, which undertook a careful review of that evidence, was therefore correct to affirm the Commissioner's decision denying Stevenson disability benefits, and we AFFIRM the district court's judgment.