Ann Marie PALMER, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.

No. 01–4183.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 2002.

Decided July 11, 2002.

Before MANION, ROVNER, WILLIAMS, Circuit Judges.

## ORDER

Ann Marie Palmer, a self-employed newspaper deliverer, injured her neck in a car accident on October 23, 1992. After the accident she attempted to return to work, but claims that her physical condition prevented her from performing her job without substantial assistance from friends and family. As a result she worked only sporadically from the time of her accident until May 1994, when she underwent cervical spinal surgery and stopped working altogether. In March 1994 Palmer applied for disability insurance benefits, alleging that she became disabled as of the October 1992 car accident. After four evidentiary hearings, an ALJ concluded that Palmer lacked credibility and that, despite her testimony to the contrary, the evidence supported a finding that she had engaged in substantial gainful activity from the date of the accident until December 31, 1993, the expiration of her disability insurance eligibility. After losing at the administrative level, Palmer filed a complaint in district court. The parties consented to the jurisdiction of a magistrate judge, who granted the Commissioner summary judgment. On appeal Palmer argues that substantial evidence does not support the ALJ's finding that she engaged in substantial gainful activity after her accident. She also claims that the ALJ denied her right to a fundamentally fair hearing, and that the ALJ failed to consider significant evidence favoring her claim. Because the ALJ based his credibility determination upon a clear error of law, we vacate and remand.

## BACKGROUND

Prior to her accident, Palmer spent her days caring for her infant son and delivering newspapers for the Waukegan News Agency. Each day she would begin bundling newspapers at 2:00 a.m. and would complete all deliveries on her commercial route by 6:30 a.m. She worked every day of the year and estimates that she earned from $180 to $240 per week, depending on the number of papers she delivered to the stores on her 75–mile route. In addition, Palmer would spend a few hours per week helping with the vacuuming and dusting in her husband's housekeeping business. Al-

though she was not paid an hourly wage for this housekeeping, the Palmers reported the business income in their joint income tax return each year.

After her October 1992 automobile accident, Palmer's daily activities changed significantly. She missed a week of work while recovering from her injuries, but when she returned to the job she still complained of persistent neck pain, severe headaches, difficulty walking, and numbness in her right arm and leg. Her condition made it difficult to lift heavy bundles as her commercial delivery route demanded. Accordingly she began delivering newspapers on a residential route, which involved similar working hours and compensation, but required less heavy lifting. Her new route was longer than the commercial route—Palmer estimates that it spanned more than 100 miles—and required that she wrap each newspaper in a plastic bag before flinging it onto a customer's driveway.

Despite these lighter duties, Palmer often found that she could not complete her task unaided. She had difficulty driving her delivery van because she needed to continually support her head on the seat's headrest. She also had difficulty wrapping the newspapers and throwing them from the car. Beginning in November 1992, she began to regularly enlist her family and friends to help her with the deliveries. Her fifteen-year-old son would join her at 2 a.m. and help with folding and wrapping the papers. Then, once the papers were wrapped, Palmer would sit in the passenger seat of the van and navigate while either her friend, sister, or husband would drive the van and drop off the papers. From the time of her accident until December 31, 1993, when her disability benefits eligibility expired, Palmer estimated that she required such assistance 90% of the time that she worked.

Although friends and family provided substantial assistance, Palmer was unable to work every day of the year. Over the fourteen-month period between her accident and the expiration of her disability eligibility, she estimated that she worked less than half of the time, anywhere from four months to six months. On the days she failed to report to work, the owner of the News Agency delivered the papers on her route. She stopped working altogether in May 1994, one week before her spinal surgery.

Palmer's other activities also declined in this period. She estimates that she averaged only half an hour of dusting per week at her husband's business. She also became incapable of performing certain household duties. Although she could cook, she could no longer do household chores and also experienced difficulty caring for her infant son, whom she could no longer pick up and hold.

Palmer applied for disability benefits in March 1994, alleging that she became disabled after her accident in October 1992. She submitted medical records from treating physicians, income tax records for the years 1992 and 1993, and letters in which her husband and sister described how they helped her deliver newspapers after her accident. Palmer also testified before an ALJ on four separate occasions over a three-year period. Her testimony contained a few obvious inconsistencies regarding her weekly income and the length of her various delivery routes. For example, while she claimed that her commercial and residential routes paid roughly equivalent compensation, her recollection of how much she received varied at different times, ranging from $185–$240 per week, to $225–$240 per week, and finally $180 per week. Similarly, her testimony regarding the length of her delivery route was imprecise and often conflicted: she

once stated that her commercial route was approximately 75–miles long, but she later claimed that the route was only 20–24 miles. She also testified that her residential route exceeded 100 miles, but her 1993 federal income tax forms did not fully support her testimony.

In September 1998, at Palmer's final oral hearing, the ALJ asked a vocational expert to consider a hypothetical individual who in 1993 drove a van approximately 40,150 miles, while directing a second individual in the van as to where to deliver newspapers. The VE testified that such a person could have earned $7 to $10 per hour, or an average salary of $24,900. On cross-examination the VE testified that a person incapable of either driving or delivering the papers, but who merely sat in the car and navigated for the delivery person and driver, would not be paid anything, because no such jobs exist.

The ALJ issued a decision denying Palmer's application for benefits, concluding that she was not disabled because she engaged in substantial work activity from the time of her accident through the expiration of her insured status. Specifically, he concluded that Palmer drove her delivery van full-time in 1993. Although Palmer had repeatedly testified that she had been unable to work after her accident, the ALJ discredited Palmer's testimony for four reasons. First, he noted Palmer's inconsistent testimony regarding her weekly pay, and concluded that the business' gross receipts, as reported in her 1993 federal income tax return, was "the more reliable figure." Based on that return, he concluded that her business earned $4,036 in 1993, or $336 per month.

Second, he determined that Palmer's testimony regarding her inability to drive her delivery van after the accident had been untruthful because her 1993 tax return, signed under penalty of perjury, reported that her vehicle was driven 40,150 miles for business purposes. Based on the information specified on the return, he concluded that Palmer averred that she personally drove the vehicle for 40,150 miles, and therefore must have driven her vehicle every day to cover such a large distance in one year, an indication that her work activity remained unchanged after her accident. Third, when Palmer submitted an amended 1993 tax return, in which she reduced her reported business mileage and incurred an additional $982 in tax liability, the ALJ questioned her motives and sincerity, and decided that her admission that her 1993 return contained an error delivered "yet another blow" to her credibility. The ALJ concluded that Palmer's original tax return more accurately reflected the miles Palmer drove, and because she was "inescapably cornered by the statement she made to the IRS," he disregarded both Palmer's testimony and her amended return. Finally, the ALJ faulted Palmer with providing conflicting testimony regarding the identity of the person who delivered the newspapers on her route when she was unable to report to work. He found her contention that her husband delivered the papers to be "incredible," and noted her contradictory testimony that the owner of the news agency filled in for her during the eight month period.[1]

Palmer advances two principal arguments on appeal. First she contends that

1. We find that the ALJ erroneously faulted Palmer with providing conflicting testimony regarding this matter. A thorough review of the record reveals that Palmer consistently testified that the owner of the news agency delivered the newspapers when she failed to report to work. The Commissioner concedes that the ALJ erred, but claims that his mistake was merely a typographical error. We disagree, and find that the ALJ's factual mistake adversely influenced his assessment of Palmer's credibility.

substantial evidence does not support the ALJ's decision, which ignores evidence favorable to her claim and contains internal inconsistencies and mischaracterized testimony. Palmer also argues that the ALJ violated her right to a fundamentally fair hearing by first suggesting that she file an amended tax return for 1993 and then attacking her credibility when she followed the advice.

## DISCUSSION

We will uphold the ALJ's decision if it is supported by substantial evidence, but if the decision contains legal error or lacks evidentiary support the case must be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir.2002); *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir.2000); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir.1992). The ALJ was required to follow the familiar five-step process for determining whether Palmer was disabled, asking (1) whether Palmer was engaged in substantial gainful activity, (2) whether her impairment or combination of impairments was severe, (3) whether she was entitled to a conclusive presumption of disability, (4) whether she was unable to perform her past relevant work, and (5) whether she was unable to perform any other work within the economy. 20 C.F.R. § 416.920; *see Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997). The ALJ concluded that Palmer's claim failed at step one—she was not eligible for benefits because she performed substantial gainful activity until her insured status expired—therefore the ALJ never proceeded to analyze Palmer's claim under the remaining four steps of the standard inquiry.

A self-employed individual, like Palmer, is considered to have engaged in substantial gainful activity if she satisfies any one of three tests: (1) if she rendered services significant to the operation of the business and received a substantial income from the business; (2) if her work activity in terms of hours, skills, energy output, efficiency, duties, and responsibilities is comparable to that of unimpaired individuals with the same or similar livelihood; or (3) if the worth of her work activity, compared to the salary an owner would pay to an employee for the same work, exceeded a certain minimum amount, in Palmer's case $500 per month.[2] *See* 20 C.F.R. § 404.1575(a); *Callaghan v. Shalala*, 992 F.2d 692, 696 (7th Cir.1993). The ALJ applied test three, and based on the value of Palmer's work activity concluded that she engaged in substantial gainful activity. Relying entirely on information Palmer included in her 1993 original federal income tax return, the ALJ determined that in 1993 Palmer drove her vehicle 40,150 miles for business purposes. Based on the size of this mileage figure, the ALJ concluded that Palmer must have worked full-time, and accordingly discredited her testimony that she could no longer work after the accident. In concluding that the value of Palmer's work exceeded $500 per month, the ALJ relied on the VE's testimony that a full-time delivery driver in 1993 would have earned an average salary of $24,900. Therefore, although Palmer's delivery business grossed only $4,036 in 1993, the ALJ concluded that the service she provided had been worth far more compensation, and that Palmer failed to meet her burden of proving she was not engaged in substantial gainful activity. *See Callaghan*, 992 F.2d at 696 (claimant bears burden of proving she was not engaged in substantial gainful activity).

---

**2.** For 1992 and 1993, the minimum worth of work must exceed, on average, $500 per month. *See* 20 C.F.R. § 404.1574(b)(2); 20 C.F.R. § 404.1575(a)(3).

Palmer argues that substantial evidence does not support the ALJ's conclusion that she was working in 1993, and cites several reasons for reversal. First, Palmer contends that the ALJ, in concluding that she engaged in substantial gainful activity, erroneously relied upon information she provided in her 1993 federal income tax return. She argues that the ALJ mistakenly believed that Palmer's deduction on the tax return, for the use of her vehicle for business purposes, was also an admission that she personally drove the vehicle for 40,150 miles. This mistaken belief, Palmer adds, was also the sole basis for the ALJ's erroneous conclusion that Palmer was "clearly working full time." Since Palmer's tax form indicates merely the number of miles the vehicle was driven for the delivery of newspapers, and does not prove that she personally drove the car, Palmer argues that substantial evidence does not support the ALJ's conclusion that she worked full-time.

The tax regulations do not require that Palmer be the driver of a vehicle in order to claim a deduction for its business use. It is true that the tax return provides some information about the vehicle's use—such as mileage and percentage of business use—but the return does not ask the taxpayer to identify the vehicle's driver. *See* 26 C.F.R. § 1.274–5T(d)(2). Because the tax code explicitly anticipates that taxpayers, such as Palmer, may claim a deduction for the business use of a vehicle even when driven by another person, *see* 26 C.F.R. § 1.280F–6T(d)(2)(C)(3)(iv), we cannot assume, as the ALJ did here, that Palmer was the only driver of her delivery van. Since the ALJ makes no reference to the tax regulations in his opinion, but merely presumes that Palmer's business deduction was an admission that she personally drove the vehicle 40,150 miles, his conclusion that she worked full-time is not supported by substantial evidence.

The ALJ's erroneous reliance on Palmer's tax deduction is further problematic because it seems to have tainted his view of Palmer's credibility. When addressing Palmer's claims that she could not work after the accident, the ALJ concluded "the fact that [Palmer] swears on her tax return that she personally drove over 40,000 miles delivering papers in 1993, destroys her credibility on this issue." Because the ALJ is in the best position to observe witnesses, this court ordinarily does not upset credibility determinations on appeal. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir.1994). But when, as in this case, such determinations rest on objective factors (i.e. reasonable inferences to be made from information contained in an income tax return) rather than subjective considerations, this court has greater freedom to review the ALJ's decision. *See id.* Here the ALJ's credibility determination cannot stand because it is based on an error of law and "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir.2000). On this ground alone, Palmer has demonstrated adequate grounds to reverse the ALJ's determination, but before we remand the case for further proceedings we will briefly address her remaining arguments.

Palmer next contends that the ALJ erred in ignoring objective medical evidence which corroborated her testimony regarding her inability to engage in substantial gainful activity. She argues that the medical evidence supports her testimony that she experienced pain and numbness when attempting to perform her job duties, and that the ALJ erred by failing to address it. The Commissioner counters that the medical evidence is irrelevant in a step-one disability inquiry.

Medical evidence may lack relevance in a disability claim once a claimant is found

to have engaged in substantial gainful activity. *See Jones v. Shalala*, 21 F.3d 191, 193 (7th Cir.1994) ("if you are substantially gainfully employed, that is the end of your claim, even if you have compelling medical evidence that you really are disabled."). Nevertheless medical evidence may be probative in situations where the record contains conflicting evidence regarding the claimant's employment activity and the ALJ must make a credibility determination in light of the entire record. *See Zurawski*, 245 F.3d at 887–88 (court lacked sufficient basis to sustain credibility determination where ALJ failed to articulate an analysis of the medical evidence).

In analyzing substantial gainful activity, the ALJ here never addressed the medical evidence, and made no mention as to how this evidence may have shaped his finding that Palmer was not credible. While the ALJ need not evaluate every piece of testimony and evidence submitted, he must sufficiently articulate his assessment of the evidence to assure this court that he considered the important evidence and to enable this court to trace the path of his reasoning. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993). On remand, if the ALJ determines that Palmer engaged in substantial gainful employment in 1993, he must explain why the medical evidence either supports or undermines his conclusion.

Palmer also presents a number of instances in which she believes that the ALJ has mischaracterized the evidence or engaged in flawed analysis; taken together these examples raise concerns about the overall quality of the ALJ's opinion. For example the ALJ concluded that Palmer worked full time in both 1992 and 1993, but failed to explain why Palmer's earnings dropped by almost 50% in 1993, even though she testified that she was paid a comparable hourly wage. An opinion that fails to "build a bridge from the evidence to the conclusion" is "analytically inadequate," unreasoned, and cannot be upheld. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir.1998).

Finally, Palmer argues that the ALJ violated her right to a "fundamentally fair" hearing by first suggesting that she file an amended tax return for 1993 and then attacking her credibility when she followed his advice. Not only did the ALJ make significant errors in this case, but the record reveals that the ALJ's bias deprived Palmer the full and fair hearing to which she was entitled. We hold that on remand Palmer is entitled to a new hearing before another ALJ. *See Sarchet v. Chater*, 78 F.3d 305 (7th Cir.1996) (cases reversed for ALJ bias automatically transfer to a different ALJ on remand); *Ventura v. Shalala*, 55 F.3d 900, 904–05 (3rd Cir.1995) (same).

## CONCLUSION

Because the substantial evidence does not support ALJ's finding that Palmer drove her vehicle 40,150 miles for business purposes in 1993, we VACATE the judgment of the district court and REMAND the case to the Social Security Administration for further proceedings consistent with this order.