Ann Marie PALMER, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 01 C 0149.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 18, 2002.

Barry Alan Schultz, Schultz & Winick, Evanston, IL, for Plaintiff.

Curt Marceille, Office of the Chief Counsel, Social Security Administration, Chicago, IL, for Defendant.

### MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the petition of plaintiff Ann Marie Palmer for an award of

attorneys' fees under the Equal Access to Justice Act ("EAJA").

Plaintiff filed an application for Disability Insurance Benefits alleging she was disabled as of October 23, 1992, due to injuries sustained in an automobile accident. After her application was denied at the initial levels of administrative review, her case was assigned to an administrative law judge ("ALJ"). The ALJ conducted four separate hearings at which plaintiff appeared, represented by counsel, and testified, before finding that plaintiff was not disabled because she had engaged in substantial gainful activity during the period between her alleged onset of disability and the expiration of her insured status on December 31, 1993. Thereafter, the Appeals Council denied plaintiff's request for review of the decision, and plaintiff sought judicial review in the federal district court. This court found that substantial evidence supported the ALJ's decision, and affirmed the Commissioner's denial of plaintiff's application for benefits. Plaintiff appealed and the Seventh Circuit Court of Appeals reversed, remanding the case to the Commissioner for a new hearing. Plaintiff now seeks an award of attorneys' fees in the amount of $17,672.10 for work done before the district and appellate courts.

Under the EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Here, the plaintiff has prevailed by succeeding in appellate court, but the issue remains whether the government's position was substantially justified. The government bears the burden of proof on this question. *Hallmark,* 200 F.3d at 1079; *Jackson,* 94 F.3d at 278. The EAJA is not a fee-shifting statute; the outcome of a case is not conclusive evidence of the justification of the government's position. *Hallmark,* 200 F.3d at 1079 (7th Cir.2000). The government's position could be incorrect and still be considered substantially justified. *Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988). In this case, there is an added nuance to this case which makes analysis of the government's position a bit more difficult. While we found the government's decision supported by substantial evidence, the appellate court did not. In fact, the appellate court found the ALJ's decision, based as it was on his credibility determination, "patently wrong." *Palmer v. Barnhart,* 40 Fed.Appx. 278, 283, 2002 WL 1489422, \*5 (7th Cir.2002).

This case, at the administrative, district court, and appellate court levels, hinged on plaintiff's credibility. Plaintiff was a self-employed individual, delivering newspapers as a subcontractor. She claimed that her automobile accident—which occurred on October 23, 1992—left her disabled due to a neck injury. Because plaintiff continued to work during the period before her insured status expired on December 31, 1993, the primary question became whether that "activity" constituted substantial gainful activity. If a plaintiff cannot prove that she is not engaging in substantial gainful activity, her claim for benefits must fail. 20 C.F.R. §§ 404 .1520; 416.920; *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir.1995); *Jones v. Shalala,* 21 F.3d 191, 192 (7th Cir.1994).

Because the plaintiff in this case was self-employed, the issue of whether she was performing substantial gainful activity depended, not necessarily on her income, but on the worth of her activity. 20 C.F.R. § 404.1575. As a result, plaintiff's testimony as to what she did, spread over four administrative hearings, was crucial.

Unfortunately, plaintiff neither kept accurate records for her business nor had much of a memory of what she did. Indeed, plaintiff stated repeatedly that she could not remember specifics as to most of the salient issues in this case: she even had difficulty remembering when she started her business. (Administrative Record ("R.") at 71, 105, 107, 112, 116, 131; 41, 102). She variously testified or attested to whether she required help to perform her duties: never (R. 191), sometimes (R. 70), nearly always (R. 125). When pressed, she could not recall how many months she actually used her vehicle to deliver newspapers in 1993. (R. 129). Faced with this, the ALJ relied on plaintiff's tax return, which indicated plaintiff drove her vehicle 40,000 miles in her business during 1993. From that figure, the ALJ employed vocational expert testimony to determine that this constituted substantial gainful activity and found that the plaintiff was not entitled to disability benefits.

When the case came before this court, we sense that the ALJ had been faced with a difficult situation. The plaintiff had applied for benefits and had the burden of proving she was not working, but testified equivocally as to that question. Beyond that, the only hard evidence of her activity at the time was the tax return. Essentially, we accepted the ALJ's credibility finding given that record, and found the Commissioner's decision was supported by substantial evidence. When considering a plaintiff's entitlement to fees under the EAJA, however, "the district court must reexamine the legal and factual circumstances of the case from a different perspective." Hallmark, 200 F.3d at 1080. From the appellate court's perspective, the ALJ's credibility determination was "patently wrong." It was based on an error of law regarding the tax form in question, which the appellate court explained referred to the miles the vehicle was driven by anyone, not just the taxpayer. Palmer, 40 Fed.Appx. at 283, 2002 WL 1489422, *5.[1] The appellate court also questioned why the ALJ never mentioned any of the medical evidence, and ordered the ALJ to "explain how the medical evidence either supports or undermines his conclusion" if he found on remand that the plaintiff engaged in substantial gainful activity.[2] Palmer, 40 Fed.Appx. at 284, 2002 WL 1489422, *6. Finally, the appellate court criticized the overall quality of the ALJ's opinion and found that he was biased against the plaintiff.

■ Thus, the appellate court determined that the ALJ was patently wrong in

---

1. While the tax form in question specifically asks the filer about "the total number of miles you drove your vehicle" for business, the court explained that the regulations, specifically 26 C.F.R. § 1.280–6T(d)(2)(C)(3)(iv), allow deductions for business use of a vehicle when driven by another person. Among the claims plaintiff made in her testimony, however, was that the news agency owner took over her route for much of the year 1993. (R. 126).

2. This court, like the ALJ, also found the medical evidence irrelevant, relying instead on the line of cases indicating that, if a plaintiff is found not disabled at the first step of the Commissioner's sequential evaluation, medical evidence need not be considered. 20 C.F.R. §§ 404.1520; 416.920; Knight v. Chater, 55 F.3d 309, 313 (7th Cir.1995); Jones v. Shalala, 21 F.3d 191, 192 (7th Cir.1994). The appellate court felt medical evidence is relevant where there is conflicting evidence of employment activity and the ALJ has to make a credibility determination, citing Zurawski v. Halter, 245 F.3d 881, 887–88 (7th Cir.2001). Palmer, 40 Fed.Appx. at 284, 2002 WL 1489422, *6. This court interpreted the Zurawski court's admonition regarding analysis of medical evidence to apply to credibility determinations regarding allegations of pain, especially as the court was discussing Social Security Ruling 96–7p.

his credibility determination, biased against the plaintiff, and erroneous in failing to consider medical evidence. While we determined that the ALJ's opinion was supported by substantial evidence, we now feel constrained to conclude, for the purposes of this EAJA petition, that the government's position was not substantially justified. While it is true that "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified," *Pierce*, 487 U.S. at 569, 108 S.Ct. at 2552, the appellate court's ruling here, we feel, is dispositive.[3] If strong language from a district court against the merits of the government's position is evidence against substantial justification. *Hallmark*, 200 F.3d at 1079, such language from the appellate court is all the more convincing. *See, e.g., Crosby v. Halter*, 152 F.Supp.2d 955, 960–61 (N.D.Ill.2001); *DeFrancesco v. Sullivan*, 803 F.Supp. 1332, 1337 (N.D.Ill.1992). Here, the appellate court was not equivocal; it found no rational ground to support the ALJ's opinion. Accordingly, we find that the government's position was not substantially justified and that the plaintiff is entitled to an award of attorney's fees under the EAJA.

■ We turn to the amount of fees sought, $17,672.10. Plaintiff request represents compensation for 106.8 hours of attorney time, 18 hours of law student time, and .8 hours of legal assistant time. The lead attorneys, Mr. Schultz and Ms. Katz, billed 105.8 hours at rates ranging from $139.77 per hour in November of 2000 to $144.43 per hour in August of 2002. Their rates are based on the EAJA allowance for payment of attorney fees at $125 per hour as of 1996 and adjustment based on the cost of living as defined by the Consumer price Index. *See* 28 U.S.C. § 2412(d)(2)(A)(ii) (attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living ... justifies a higher fee). These rates were determined by using the annual Consumer Price Index for each of the years in question. *See Marcus v. Shalala*, 17 F.3d 1033, 1040 (7th Cir.1994). The total award sought, especially given the experience of the attorneys in this area of law, does not appear excessive. *See, Crosby v. Halter*, 152 F.Supp.2d 955, 961–962 (N.D.Ill.2001) (approving $24,827.86 award for district court litigation and successful appeal).

The Commissioner finds fault with the amount of time spent in district court and appellate court litigation—48.2 and 73.8 hours, respectively. From the court's perspective, these amounts of time do not appear excessive, especially in the appellate court, given the fine result achieved. As for time spent in the district court, the figure of 48 hours does not appear to be excessive when compared with other cases. In addition, this was not the ordinary disability case, as it involved matters somewhat removed from the average residual functional capacity assessment—including tax law—and the record was rather voluminous at 459 pages. *See, e.g., Schutt v. Massanari*, No. 00 C 1370 (N.D.Ill. Sept. 28, 2001.) 2001 WL 1155253, *3.

■ The Commissioner also questions the 18 hours of law student work billed at $75 per hour. Given the history of awards for law student work, the court cannot find

---

**3.** We are aware that the Seventh Circuit has stated that while a court's language in an opinion is relevant, it is more important that we examine the actual merits of the government's position. *Hallmark*, 200 F.3d at 1080.

In a case such as this, however, where the appellate court's assessment of that position is so divergent from that of the district court, we feel reliance on the appellate court is the better course.

the hourly rate of $75 excessive. *See, e.g., Butts v. Bowen,* 775 F.Supp. 1167, 1173 (N.D.Ill.1991) (award of $75 per hour eleven years ago); *Bady v. Sullivan,* No. 87 C 962, 1992 WL 332307, *3 (N.D.Ill. Nov. 9, 1992) (award of $50 per hour ten years ago). The law student in this case spent all 18 hours working on the district court brief. Notably, however, Mr. Schultz spent 6.9 hours reviewing and revising the brief, and he had written a brief to the Appeals Council covering mostly the same material and arguments. (R. 452–59). In reviewing an EAJA petition, a court should exclude hours not reasonably expended—those that are "excessive, redundant or otherwise unnecessary." *Uskokovic v. Sullivan,* 772 F.Supp. 387, 391 (N.D.Ill.1991) (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Certainly, it would have been far more efficient for Mr. Schultz to spend a bit more time and simply write the district court brief himself. Accordingly, we will reduce the law student hours claimed by half, or $675. In addition, we will disallow the charge for seeking publication of the appellate court's order—$86.69—as it was unnecessary expense which would not further the client's interests. This amounts to a total reduction of $761.69, for a total award of $16,910.41.

## CONCLUSION

For the foregoing reasons, the plaintiff's petition for an award of attorneys' fees under EAJA is granted in the amount of $16,910.41.